IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31308-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FELIPE RONALD JARDINEZ, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

FEARING, J. — The State of Washington appeals the trial court's suppression, as

trial evidence, of a video found by a community corrections officer on parolee Felipe

Jardinez's iPod and a shotgun seized at his home. The appeal requires us to address the

scope of RCW 9.94A.631(1), which under certain circumstances permits a warrantless

search of a parolee by a corrections officer. Since the search of the iPod did not relate to

a suspected parole violation and the seizure of the gun was the result of viewing a video

on the iPod, we affirm the trial court.

FACTS

Felipe R. Jardinez previously pled guilty to a drive-by shooting and second degree

unlawful possession of a firearm. He served prison time followed by 18 months of community supervision. The conditions of community custody included requirements to report to his assigned community corrections officer and refrain from possession or consumption of controlled substances except pursuant to a prescription.

On November 3, 2011, Felipe Jardinez missed a scheduled meeting with his Community Corrections Officer, Roger Martinez. Martinez phoned Jardinez, but received no answer. On November 14, Jardinez returned Martinez's call, and the two scheduled to meet the next day. During the appointment, Martinez asked Jardinez to submit to a urinalysis test. Jardinez admitted that the test would show marijuana use.

At the direction of Roger Martinez, Felipe Jardinez emptied his pockets and placed an iPod Nano onto a desk. Martinez later testified that the iPod interested him because parolees occasionally take pictures of themselves with other gang members or "doing something they shouldn't be doing." Report of Proceedings (RP) (Oct. 10, 2012) at 9. When Martinez handled the iPod, Jardinez appeared nervous to Martinez. Martinez asked Jardinez if he would see something on the iPod's video that Jardinez did not want seen. Jardinez replied that the iPod only held music. At the suppression hearing, Officer Martinez stated that, other than Jardinez appearing nervous, he lacked facts that the iPod video player would show evidence of a crime or violation of the conditions of the defendant's community custody.

Roger Martinez accessed the iPod, searched its content, and found a video

recorded earlier that morning. Martinez played the video, which showed Felipe Jardinez pumping a shotgun in his bedroom. Jardinez prevaricated that the weapon in the video was a BB gun. After Martinez offered to confirm the nature of the gun with a home visit, Jardinez recanted and confessed that the weapon was a shotgun. After Jardinez's arrest, Toppenish police and correction officers searched Felipe Jardinez's home for the shotgun. The officers found a shotgun matching the one Jardinez held in the video.

PROCEDURE

The State of Washington charged Felipe Jardinez with first degree unlawful possession of a firearm. Jardinez moved to suppress evidence obtained through Officer Roger Martinez's search of his iPod, and all evidence seized as a result of law enforcement officers searching his home as the spoiled fruit of the unlawful viewing of the video on his iPod. In response, the State argued that, if an offender on community custody evades a meeting with his corrections officer, the officer may search the offender's home for any contraband, since the officer then has reasonable suspicion that the probationer violated the terms of his community custody. According to the State, if the offender misses a scheduled meeting, a search requires no nexus to the missed appointment.

The trial court granted Felipe Jardinez's motion to suppress. The court concluded that a warrantless search of the iPod would be justified only if Officer Roger Martinez had a reasonable suspicion based on articulated facts that the device contained evidence

3

of past, present or future criminal conduct or violations of the defendant's conditions of community custody. Since Officer Martinez testified he had no evidence to support his search of the device, except for Jardinez acting nervous, the trial court concluded the search was not proper. The trial court impliedly ruled that a community corrections officer's reasonable suspicion must relate to the item or place to be searched. In response to a motion for reconsideration, the trial court explicitly ruled that there must be a "reasonable nexus between the suspected criminal activity and the search." RP (Nov. 2, 2012) at 2.

## LAW AND ANALYSIS

On appeal, the State of Washington assigns no error to any findings of fact contained in the trial court's memorandum opinion. Therefore, we assume that Corrections Officer Roger Martinez lacked reasonable suspicion that the iPod's video player would show criminal activity. The rule in Washington is that unchallenged findings entered after a suppression motion hearing are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003); *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). The State does not argue that Felipe Jardinez's implied confession to use of marijuana justified the home search.

At issue is whether Officer Roger Martinez had legal authority to search the content of Felipe Jardinez's iPod when Martinez did not expect the search to yield evidence related to either of the known parole violations, Jardinez's failure to appear, or

4

his marijuana use. Unless an exception is present, a warrantless search is impermissible under both article I, section 7 of the Washington Constitution and the Fourth Amendment to the U.S. Constitution. WASH. CONST. art. I, § 7; U.S. CONST. amend. IV; *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). The trial court suppresses evidence seized from an illegal search under the exclusionary rule or the fruit of the poisonous tree doctrine. *Gaines*, 154 Wn.2d at 716-17.

Although in some circumstances article 1, section 7 provides broader protections than its federal counterpart, Washington law recognizes that probationers and parolees have a diminished right of privacy that permits a warrantless search based on probable cause. *State v. Lucas*, 56 Wn. App. 236, 239-40, 783 P.2d 121 (1989). Parolees and probationers have diminished privacy rights because they are persons whom a court has sentenced to confinement but who are serving their time outside the prison walls. Therefore, the State may supervise and scrutinize a probationer or parolee closely. *Lucas*, 56 Wn. App. at 240. Nevertheless, this diminished expectation of privacy is constitutionally permissible only to the extent necessitated by the legitimate demands of the operation of the parole process. *State v. Parris*, 163 Wn. App. 110, 118, 259 P.3d 331 (2011); *State v. Simms*, 10 Wn. App. 75, 86, 516 P.2d 1088 (1973).

RCW 9.94A.631 provides exceptions to the warrant requirement. We note that one federal court has upheld the constitutionality of a forerunner to the statute. *United States v. Conway*, 122 F.3d 841 (9th Cir. 1997). Since we hold the statute gave no

5

authority to Roger Martinez to search the iPod, we need not address the constitutionality

of the statute. RCW 9.94A.631(1) reads:

> If an offender violates any condition or requirement of a sentence, a community corrections officer may arrest or cause the arrest of the offender without a warrant, pending a determination by the court or by the department. *If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property.*

(Emphasis added.)

We have construed the "reasonable cause" phrase in RCW 9.94A.631(1) to require

the officer to have a "well-founded suspicion that a violation has occurred." *State v.*

*Massey*, 81 Wn. App. 198, 200, 913 P.2d 424 (1996). "Analogous to the requirements of

a *Terry* stop, reasonable suspicion requires specific and articulable facts and rational

inferences." *Parris*, 163 Wn. App. at 119 (footnote omitted) (referring to *Terry v. Ohio*,

392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "Articulable suspicion" is defined

as a substantial possibility that criminal conduct has occurred or is about to occur. *State*

*v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). These principles do not answer the

question of what and where the community custody officer may search when he has

reasonable cause to believe a community custody violation occurred.

The State of Washington, relying on the ending language of RCW 9.94A.631(1),

argues that Officer Martinez's well-founded suspicion that probation violations had

6

occurred justified the warrantless search of Jardinez's "person, residence, automobile, or other personal property," regardless of whether the search might yield evidence related to the violations. In essence, the State argues any parole violation justifies any search for any other violation. The argument emphasizes that the statute allows a search of "*other personal property*," which, according to the State, implies property other than the property with a nexus to any criminal activity. (Emphasis added.)

Felipe Jardinez counters that every search, including those conducted under RCW 9.94A.631, must conform to the strictures of the Fourth Amendment, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Jardinez cites multiple United States Supreme Court decisions that limit the scope of a search to be commensurate with, but not exceed, the suspicion that instigated it, *Arizona v. Gant*, 556 U.S. 332, 351, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); and *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 299, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967). Jardinez also cites Washington cases espousing the same principle: *State v. Hudson*, 124 Wn.2d 107, 112, 874 P.2d 160 (1994); and *State v. B.A.S.*, 103 Wn. App. 549, 553, 13 P.3d 244 (2000).

We start our analysis with an interpretation of the unencumbered language of

7

RCW 9.94A.631(1), which excuses the warrant requirement under some circumstances. The purpose of statutory interpretation is to determine and carry out the intent of the legislature. *State v. Sweat*, 180 Wn.2d 156, 159, 322 P.3d 1213 (2014). If the words of a statute are clear, we end our inquiry. *Sweat*, 180 Wn.2d at 159. In discerning the plain meaning of a provision, we consider the entire statute in which the provision is found, as well as related statutes or other provisions in the same act that disclose legislative intent. *State v. Alvarado*, 164 Wn.2d 556, 562, 192 P.3d 345 (2008). When a statute is ambiguous after the plain meaning analysis, we may look to the legislative history of the statute and the circumstances surrounding its enactment. *State v. Johnson*, 179 Wn.2d 534, 542, 315 P.3d 1090 (2014); *State v. Evans*, 177 Wn.2d 186, 199-201, 298 P.3d 724 (2013).

We cannot discern "plain meaning" in RCW 9.94A.631(1) for purposes of addressing the scope of any search. The language could be read to allow an unlimited scope of the search. The statute could be read to limit the search to areas or property about which the community corrections officer has reasonable cause will provide incriminating evidence.

Two Washington decisions address the applicability of RCW 9.94A.631(1). In *State v. Parris*, 163 Wn. App. 110, Derek Lee Parris appealed his conviction for possession of depictions of a minor engaged in sexually explicit conduct. He argued that the trial court erred in failing to suppress evidence discovered during a search of memory

cards seized without a warrant. Parris had earlier received a community custody sentence for felony failure to register as a sex offender. Provisions of his community custody prohibited him from having contact with minors, possessing pornography, and possessing or using alcohol or illegal drugs and drug paraphernalia. His community custody also required him to engage in drug and alcohol treatment, be employed, and comply with a 10:00 p.m. to 5:00 a.m. curfew. Parris violated several of his probationary requirements: a urinalysis test revealed methamphetamine use; he failed to participate in a drug and alcohol treatment program; and he failed to provide proof of work or legitimate income. Parris's Community Corrections Officer, Nancy Nelson, received an electronic report that Bremerton police arrested Parris for driving with a suspended license at 10:40 p.m. and that an underaged young woman rode in the car. That same day, Nelson received a phone call from Parris's mother, who expressed concern about Parris's drug use and uncontrolled behavior. Parris's mother told Nelson that Parris had threatened to get a gun if Department of Corrections staff tried to arrest him. After conferring with her supervisor, Nelson decided to arrest Parris and to search his residence.

Nancy Nelson went to Derek Lee Parris's residence, accompanied by two other corrections officers and two deputy officers from the Kitsap County Sheriff's office. Parris lived in a small room off the side of his mother's garage. After knocking on Parris's door for 10 to 15 minutes with no response, Nelson and her companions walked around to the side of the building, which had two windows. As they looked in the

windows, officers saw Parris and a young female hiding in the room and ordered them to exit. Officers took the young female to another part of the property and identified her as 17-year-old D.L.S. Nelson and her fellow officers searched Parris's room. Nelson noticed a large quantity of women's clothing, which appeared to belong to D.L.S. Nelson identified several items that Parris's community custody conditions prohibited him from having, including four syringes, an empty bottle of vodka, and pornography. In a small zippered case, Nelson found two portable USB (universal serial bus) memory cards, used to record digital images and videos. One of the memory cards listed the name of D.L.S. Nelson did not know what information might be on the memory cards but, thinking they might show Parris's violation of probation, she seized them. Nelson viewed the memory cards' contents the following day. Data on two of the memory cards included photos of two guns in a case and a 17-minute video of sexual activity between Parris and D.L.S.

On appeal, Derek Lee Parris argued that Officer Nelson needed a warrant to search the memory cards. This court disagreed. The court ruled that Nelson had reasonable cause to believe that Parris violated community custody conditions and thus RCW 9.94A.631(1) authorized the search. A broad reading of *Parris* would support a search of any offender's property upon violation of community custody conditions. Nevertheless, the court noted that convicted sex offenders in Washington have a reduced expectation of privacy because of the public's interest in public safety. *State v. Parris*, 163 Wn. App. at 118. The facts differ from the facts in Felipe Jardinez's appeal in that Nancy Nelson had

10

a compelling reason to go to Parris's home. She spotted Parris with a young lady inside the home in violation of parole conditions, and, upon entering the home, saw a disk with the minor's name thereon. Parris's mother told Nelson that he might have obtained a firearm, and Nelson was concerned about whether Parris might be storing an illegal firearm in his room. She believed she might find evidence of a firearm in a photograph, video, or DVD (digital video disk). Here, Officer Roger Martinez had no reason to believe Felipe Jardinez possessed a firearm before Martinez opened the iPod.

Derek Lee Parris did not challenge Nelson's well-founded suspicion to support the search of his room. The *Parris* court did not expressly rule that all property of the offender may be searched.

In *State v. Reichert*, 158 Wn. App. 374, 242 P.3d 44 (2010), a community corrections officer and sheriff deputies went to premises suspected to be Joseph Reichert's home. Reichert had failed to report his current address. An informant warned officers that Reichert engaged in a marijuana grow operation. The officers arrested Reichert outside his house, found keys on his person, used the keys to open the front door, and smelled marijuana without entering the home. The officers obtained a search warrant before entering the home. This court mentioned RCW 9.94A.631(1) allowed search of a parolee's property, but did not otherwise analyze the statute. The court remanded for a hearing to determine if the officers had probable cause to believe that

11

Reichert resided in the searched premises. This remand suggests that the court deemed a nexus between the searched premises and the suspected crime was necessary.

Since we cannot resolve the issue at hand by a reading of the statute, we base our decision principally upon the Sentencing Guidelines Commission (Commission) comment about RCW 9.94A.631(1). The Commission wrote as its official comment behind the statute:

> The Commission intends that Community Corrections Officers exercise their arrest powers sparingly, with due consideration for the seriousness of the violation alleged and the impact of confinement on jail population. Violations may be charged by the Community Corrections Officer upon notice of violation and summons, without arrest.
> *The search and seizure authorized by this section should relate to the violation which the Community Corrections Officer believes to have occurred.*

DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE SENTENCING REFORM ACT OF 1981, at app. 1-13 (1985) (formatting omitted) (emphasis added). The comment's latter sentence demands a nexus between the searched property and the alleged crime. This demand is consistent with general principles of search and seizure law previously outlined.

The Commission's comments are not legislative history in a traditional sense, but we nonetheless rely on the Commission's comment to aid statutory interpretation. The Sentencing Reform Act of 1981 ch. 9.94A RCW established the Commission as an independent agency. Former RCW 9.94A.040 (1986). The Commission advised the

12

governor and the legislature on issues relating to adult and juvenile sentencing policies

and practices, until reorganized in 2011 into the caseload forecast council and sex

offender policy board. LAWS OF 2011, 1st Spec. Sess., ch. 40, §§ 27, 37. Courts may

look to the comments of the Commission in interpreting the Sentencing Reform Act of

1981. *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 250, 955 P.2d 798

(1998); *State v. Pedro*, 148 Wn. App. 932, 947 n.4, 201 P.3d 398 (2009). Our reviewing

courts have repeatedly relied on the Commission's comments as indicia of the

legislature's intent. *See In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 815-16, 272

P.3d 209 (2012); *State v. Moeurn*, 170 Wn.2d 169, 175-76, 240 P.3d 1158 (2010); *State

v. Armendariz*, 160 Wn.2d 106, 114, 156 P.3d 201 (2007); *In re Pers. Restraint of Caley*,

56 Wn. App. 853, 857, 785 P.2d 1151 (1990); and *State v. Sullivan*, 47 Wn. App. 81, 84-

85, 733 P.2d 598 (1987). Our Supreme Court similarly relied on a book from Professor

David Boerner to obtain the Commission's comments in *State v. Breazeale*, 144 Wn.2d

829, 838, 31 P.3d 1155 (2001).

## CONCLUSION

RCW 9.94A.631 did not authorize Officer Roger Matinez's warrantless search of

the contents of Felipe Jardinez's iPod. The trial court correctly interpreted and applied

RCW 9.94A.631. We affirm the trial court's suppression of the evidence of Felipe

Jardinez's unlawful possession of a firearm.

No. 31308-5-III
*State v. Jardinez*


_____
                    Fearing, J.

WE CONCUR:

_____
    Korsmo, J.

_____
    Lawrence-Berrey, J.

14