# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47444-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CURTIS L. CORNWELL, | |
| Appellant. | |

SUTTON, J. — Curtis L. Cornwell appeals his convictions for three counts of unlawful possession of a controlled substance with intent to deliver and one count of resisting arrest. We hold that the trial court did not err in denying Cornwell's motion to suppress drug possession evidence found in his vehicle. As part of his sentence, Cornwell had consented to certain conditions that included a search of his personal property if there was a reasonable suspicion that he had violated the terms of his probation. Thus, Cornwall had a diminished expectation of privacy. Because a Community Corrections Officer (CCO) had reasonable cause to believe that Cornwell had violated his probation, we hold that the search of the vehicle was lawful under RCW 9.94A.631(1). We also hold that Cornwell's ineffective assistance of counsel claim fails because

he cannot establish that he was prejudiced as a result of his counsel's failure to cite *State v. Jardinez*[1] to the trial court. We affirm Cornwell's convictions.

FACTS

On November 28, 2013, Tacoma Police Department (TPD) Officers Randy Frisbie and Patrick Patterson initiated the traffic stop of a black and red Monte Carlo because of a Department of Corrections' (DOC) arrest warrant for Cornwell for failing to report. Sometime in the weeks before November 28, Officer Frisbie and DOC CCO Thomas Grabski, both members of the TPD gang unit, were surveilling a known drug house when a man driving the Monte Carlo pulled up beside Grabski, rolled down his window, and looked at him as Grabski sat in an unmarked vehicle. Grabski wrote down the Monte Carlo's license plate number.

Janet Lamb, the vehicle's registered owner, gave Frisbie and Grabski a description of the Monte Carlo, told them that she owned the vehicle, but informed the officers she had given the vehicle to her ex-boyfriend, Cornwell, to drive. Lamb also told Frisbie and Grabski that she wanted the vehicle returned.

At the time, Cornwell was subject to probation conditions imposed as a result of a prior drug possession conviction. As with any offender released into the community and under DOC supervision, Cornwell had consented to DOC's authority to search his "person, residence, automobile, or other personal property" so long as there was reasonable cause to believe that he had violated any conditions or requirements of his probation. Exh. 4 at 3.

---

[1] *State v. Jardinez*, 184 Wn. App. 518, 523, 338 P.3d 292 (2014).

On November 28, Frisbie and Patterson were on patrol together when they saw the same Monte Carlo pass in front of them. Frisbie and Patterson believed that Cornwell was driving the vehicle and they were aware that there was an outstanding arrest warrant for Cornwell for alleged violations of his probation.

Frisbie turned his patrol car to follow the Monte Carlo, but before he was able to activate his emergency lights to initiate a stop, the Monte Carlo pulled into a driveway and Cornwell began to exit. Frisbie ordered Cornwell to stay in the vehicle, but Cornwell did not comply. The officers then drew their Tasers[2] and ordered Cornwell to the ground. Cornwell acted as if he was going to comply, but then started to run away. Frisbie and Patterson deployed their Tasers on Cornwell and arrested him. Cornwell did not have a passenger, and neither officer entered the vehicle. The officers confirmed Cornwell's identify and warrant status, then contacted Grabski, who, as a CCO, was authorized to conduct a warrantless search of property belonging to an offender who is suspected of violating probation. Grabski searched the Monte Carlo.

In the front seat of the Monte Carlo, Grabski found a small, black nylon bag. The bag contained a number of pills: oxycodone, amphetamine, and ecstasy, small spoons, sim cards for cell phones, and a cell phone. Cornwell also had $1,573 in his wallet. Cornwell told the police officers that the pills were for his migraines.

---

[2] Tasers are electronic weapons that temporarily incapacitate targets with propelled wires or direct contact to conduct energy which affects the sensory and motor functions of the nervous system. *See Michelbrink v. State*, 191 Wn. App. 414, 435 n.1, 363 P.3d 6 (2015).

The State charged Cornwell with three counts of unlawful possession of a controlled substance with intent deliver and one count of resisting arrest. Pre-trial, pursuant to CrR 3.6, Cornwell moved to suppress the evidence found during Grabski's search of his vehicle.[3] The trial court denied Cornwell's motion to suppress and found that the search was valid and lawful because Cornwell had agreed to the probation conditions, including a search of his personal property, and that the CCO had reasonable cause to search the vehicle under RCW 9.94A.631(1). After a jury trial, the jury convicted Cornwell as charged. Cornwell appeals.

ANALYSIS

I. CRR 3.6 MOTION TO SUPPRESS

Cornwell argues that the trial court erred when it denied his motion to suppress because Grabski's search of the vehicle exceeded his lawful authority under RCW 9.94A.631(1). Cornwell further argues that the trial court should have suppressed the evidence found in his vehicle because there was no nexus between his alleged violations and Grabski's search of the vehicle as required. We disagree.

We review a trial court's denial of a motion to suppress evidence to determine whether substantial evidence supports the trial court's findings of fact, and whether those findings support the trial court's conclusions of law, which we review de novo. *State v. Rooney*, 190 Wn. App. 653, 658, 360 P.3d 913 (2015), *review denied*, 185 Wn.2d 1032 (2016). Substantial evidence is

---

[3] The trial court conducted a combined CrR 3.5 and CrR 3.6 hearing on Cornwell's statements to police after his arrest and on the suppression of the evidence seized during Grabski's search. Cornwell's statements to police are not at issue in this appeal.

evidence sufficient to persuade a fair-minded person of the truth of the stated premise. *State v. Russell*, 180 Wn.2d 860, 866-67, 330 P.3d 151 (2014).

Both article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution prohibit warrantless searches unless an exception exists. WASH. CONST. art I, § 7; U.S. CONST. amend. IV; *Rooney*, 190 Wn. App. at 658. Washington law recognizes that probationers and parolees have a diminished right of privacy that permits warrantless searches based on reasonable cause to believe that a violation of probation has occurred. *Jardinez*, 184 Wn. App. at 523. RCW 9.94A.631 states

> [i[f there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property.

Under RCW 9.94A.631(1), a CCO may require a person subject to probation conditions to submit to the search of his or her property if the CCO has a well-founded suspicion that the person has violated a condition of his or her probation. *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009).

"Reasonable cause" requires the CCO to have "a well-founded suspicion that a violation has occurred." *State v. Massey*, 81 Wn. App. 198, 200, 913 P.2d 424 (1996). Further, a person under community supervision has a diminished expectation of privacy in their residences, vehicles, or personal belongings, and may be searched on the basis of a well-founded or reasonable suspicion of a violation of probation conditions. RCW 9.94A.631(1). Requiring a person subject to community supervision to consent to a warrantless search is reasonable because a person subject to probation conditions has a lesser expectation of privacy. *Winterstein*, 167 Wn.2d at 628.

Under CrR 3.6(b), the trial court is required to enter written findings of fact and conclusions of law. We begin by acknowledging that although the trial court erred here by failing to enter written findings of fact after the CrR 3.6 hearing, any such error here is harmless because the trial court's oral findings in the record are sufficient for our review. *See State v. Miller*, 92 Wn. App. 693, 703-04, 964 P.2d 1196 (1998). Cornwell did not challenge the oral findings of fact; thus, they are verities on appeal. *State v. O'Cain*, 108 Wn. App. 542, 547-48, 31 P.3d 733 (2001).

Regarding the merits of Cornwell's contention, it is undisputed that a DOC warrant had been issued for Cornwell's arrest. At the time of the search, Grabski knew that Cornwell was alleged to have violated his probation terms and he searched the Monte Carlo based on his knowledge of the alleged violation. Grabski's awareness that Cornwell had an active warrant for his arrest constituted reasonable cause to believe that Cornwell had violated a condition or requirement of his sentence and therefore, Grabski had the authority to compel Cornwell to submit to a search of the vehicle that he was driving pursuant to RCW 9.94A.631(1). Accordingly, the trial court properly denied the suppression of the drug evidence found in the bag on the front seat.[4]

Cornwell further argues that the trial court should have suppressed the evidence found in his vehicle because there was no nexus between his alleged violations and Grabski's search of the vehicle as required. Cornwell relies on an opinion from Division Three of our court, *State v. Jardinez*, 184 Wn. App. 518, 338 P.3d 292 (2014), in support of this proposition. We disagree that the evidence should have been suppressed.

_____

[4] We are aware of the recent case, *Utah v. Streiff*, ___ U.S. ___, 136 S. Ct. 2056, 195 L. Ed. 2d 400 (2016) addressing attenuation. Because the parties do not address this issue, we also decline to do so.

In *Jardinez*, Division Three quoted the following portion of the Sentencing Guidelines Commission's comment about RCW 9.94A.631(1),

> "The Commission intends that Community Corrections Officers exercise their arrest powers sparingly, with due consideration for the seriousness of the violation alleged and the impact of confinement on jail population. Violations may be charged by the Community Corrections Officer upon notice of violation and summons, without arrest.
>
> *The search and seizure authorized by this section should relate to the violation which the Community Corrections Officer believes to have occurred.*"

*Jardinez*, 184 Wn. App. at 529 (alteration in original) (quoting DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE SENTENCING REFORM ACT OF 1981, at app. 1-13 (1985)). The court interpreted the last sentence to require "a nexus between the search property and the alleged crime." *Jardinez*, 184 Wn. App. at 529. Cornwell depends on this apparent nexus requirement in support of his argument that the evidence found in the vehicle should have been suppressed.

However, no other Washington court has required a nexus between the property to be searched and a specific violation. Rather, it is well settled that an officer searching a parolee under RCW 9.94A.631(1) must have a well-founded suspicion that *a* violation has occurred. *Massey*, 81 Wn. App. at 201; *see also State v. Parris*, 163 Wn. App. 110, 119, 259 P.3d 331 (2011) (stating that a well-founded suspicion is similar to the "articulable suspicion" requirement of a *Terry*[5] stop, a substantial possibility that criminal conduct has or is about to occur).

---

[5] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Even if RCW 9.94A.631(1) requires that a CCO suspect a specific probation violation to conduct a lawful search of a probationer, here, there was a sufficient nexus between the suspected probation violation and the search of the vehicle. CCO Grabski saw Cornwell in the vehicle near a known drug house that was under surveillance, a valid DOC arrest warrant had been issued for Cornwell,[6] Cornwell attempted to flee from the vehicle when stopped, and based on his criminal history, CCO Grabski suspected that Cornwell was involved in drug-dealing. Therefore, CCO Grabski had reasonable cause to believe Cornwell had violated his probation and had authority under RCW 9.94A.631(1) to search the vehicle. Thus, we hold that the vehicle search was lawful under RCW 9.94A.631(1) and the trial court properly denied the motion to suppress.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Cornwell argues that he was denied effective assistance of counsel because his counsel failed to argue that, under *Jardinez*, there was no nexus between Cornwell's suspected violation and Grabski's search of the vehicle. We disagree. Cornwell's claim of ineffective assistance of counsel fails because he fails to show prejudice.

To succeed in a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation was deficient, and (2) the deficient representation resulted in prejudice to the defendant. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Deficient

---

[6] Although the parties do not address whether attenuation applies, and we do not address this issue further, the United States Supreme Court recently held that a pre-existing arrest warrant created an attenuated connection between an unlawful investigatory stop and the evidence seized incident to arrest. *Utah v. Strieff*, No. 14-1373, 2016 WL 3369419 (Sup. Ct. June 20, 2016); *see also State v. Rothenberger*, 73 Wn.2d 596, 440 P.2d 184 (1968) (holding that information acquired from an independent source during an illegal stop could be used to affect a lawful arrest and search).

performance requires a showing that counsel's performance fell below an objective standard of reasonableness. *McFarland*, 127 Wn.2d at 334-35. To satisfy the prejudice prong of the *Strickland* test, the defendant must show that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *State v. Grier*, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

We strongly presume that counsel's performance was effective. *State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (2011). Counsel has a duty to research relevant law, and failure to do so is deficient performance. *See Brown*, 159 Wn. App. at 373. Here, the *Jardinez* opinion was issued approximately one month before Cornwell's suppression hearing. There is no information in the record regarding whether counsel decided to ignore *Jardinez*¸ or whether counsel failed in his duty to research the relevant law. Regardless, Cornwell's claim fails because he fails to show prejudice.

Even if counsel had argued for suppression under *Jardinez*, the outcome of the proceeding likely would have been the same. Grabski observed Cornwell drive up to a known drug house that Grabski and Frisbie were surveilling. Based on that observation and Cornwell's status of being on community supervision for a drug offense, Grabski suspected that Cornwell was engaged in drug dealing. Cornwell was the only known driver of the Monte Carlo, was the only occupant in the vehicle when it was stopped, and he attempted to flee from the vehicle when Frisbie and Patterson stopped him. Given these facts, Cornwell cannot show there is a reasonable probability that had counsel argued *Jardinez*, the outcome of the proceedings would have been different.

Thus, we hold that Cornwell's claim of ineffective assistance fails because Cornwell cannot show prejudice.

## CONCLUSION

We hold that the trial court did not err in denying Cornwell's motion to suppress. We also hold that Cornwell's claim of ineffective assistance of counsel fails because he fails to show prejudice. Thus, we affirm Cornwell's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, P.J.

MELNICK, J.