**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79238-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SHAWN LEE GODWIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Shawn Godwin appeals his conviction for possession of a controlled substance and unlawful possession of a firearm in the first degree. Godwin contends that the trial court erred when it denied his motion to suppress the evidence found in his pickup truck. We disagree and affirm.

I.

Godwin was previously convicted of first degree robbery with a deadly weapon, second degree robbery, intimidating a witness, third degree assault, and felony possession of a controlled substance. Conditions of his community custody supervision required him to report to his Community Custody Officer (CCO) and prohibited him from possessing or consuming any controlled substance without a lawful prescription.

Citations and pin cites are based on the Westlaw online version of the cited material.

The Department of Corrections (DOC) issued a felony arrest warrant for Godwin's violation of supervision and failure to report. Godwin's CCO Michael Woodruff had information about the residence where Godwin was staying in Marysville and developed a surveillance plan to find and apprehend Godwin. In May 2017, Woodruff drove by the residence and saw a green pickup truck that Godwin was known to drive backed into the front yard. Within minutes of observing the residence, Woodruff saw Godwin exit the house and walk across the front yard to the pickup truck. Snohomish County Sheriff's Deputy Jon Barnett approached the pickup truck in his patrol car and turned on the emergency lights. Godwin was seated in the driver's seat with the engine running. When Godwin observed Barnett, he exited the pickup truck and began walking back to house. Barnett apprehended Godwin before he could get back to the house and arrested him.

Woodruff read Godwin the Miranda[1] warnings. Godwin indicated that he understood his rights and was willing to talk with officers. Snohomish County Sheriff's Deputy Lucas Robinson had spoken with Godwin on the phone a couple of weeks earlier about his warrant and recommended that Godwin turn himself in. Woodruff asked Godwin why he had not turned himself in and Godwin responded that he had been using meth and messing up.

Godwin told officers that the pickup truck belonged to his friend "Craig" and that he was just moving the pickup truck for Craig when officers arrived. After checking the records for the pickup, it showed a bill of sale from Godwin to Craig Norris in February 2017, but the title never transferred. Woodruff asked Godwin if he left anything inside

_____

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

the pickup truck and Godwin indicated he left a black bag, beanie cap, and some change in the pickup truck. Woodruff observed numerous items in the pickup truck, including clothing consistent with Godwin's size and a grey sweatshirt that looked like one that Godwin wore during a prior arrest.

Because Godwin admitted using methamphetamine, which was a violation of his community custody conditions, Woodruff searched the pickup truck and Godwin's inoperable Volvo parked in the backyard. Upon searching the pickup truck, Woodruff located methamphetamine, heroin, a loaded handgun, a glass pipe, and a digital scale. Godwin admitted the drugs and paraphernalia were his, but denied ownership of the gun.

The State charged Godwin with one count of possession of a controlled substance and one count of unlawful possession of a firearm in the first degree. Both charges were allegedly committed while he was on community custody. Godwin moved to suppress the evidence found in the pickup truck and testified that he told Robinson about his methamphetamine use, not Woodruff. The trial court did not find Godwin's testimony credible and denied his motion to suppress. The case proceeded to a bench trial and the trial court found Godwin guilty of possession of a controlled substance and unlawful possession of a firearm, sentencing him to 87 months.

Godwin assigns error to the following findings of fact:

9. The defendant saw the officer, quickly exited the green pickup truck, and began walking away from the truck and towards a nearby house.

10. The Court finds these actions were specifically directed at attempting to distance himself from the green pickup truck and any objects therein.

. . . .

-3-

17.  The information that the defendant was previously driving the vehicle, the clothing inside the vehicle that appeared consistent with what the defendant was wearing at the time of a prior arrest, and the defendant's actions support the conclusion that the green truck was the defendant's vehicle.

18. Specialist Woodruff held probable cause to believe the truck was the defendant's and had a reasonable belief that evidence of a suspected violation related to possession of methamphetamine or associated paraphernalia would be found in the green truck.

Godwin also assigns error to the court's conclusion of law, "There was a direct nexus between the green ford pickup and the suspected community custody violations of possession of controlled substances and drug paraphernalia."

II.

Godwin contends that the trial court erred when it denied his motion to suppress the evidence found in the pickup truck because there was no nexus between the pickup truck and the alleged probation violation. We disagree.

Challenged findings of fact from suppression hearings are reviewed to determine if they are supported by substantial evidence. State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), abrogated on other grounds by, Brendlin v. California, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed.2d 132 (2007). Findings are generally viewed as verities on appeal if there is substantial evidence to support the findings. State v. Hill, 123 Wn.2d 641, 644-45, 870 P.2d 313 (1994). Substantial evidence exists where there is sufficient evidence in the record to persuade a fair-minded, rational person of the truth of the finding. Mendez, 137 Wn.2d at 214. Conclusions of law from a suppression hearing are reviewed de novo. State v. Carneh, 153 Wn.2d 274, 281, 103 P.3d 743 (2004).

Persons on community custody have a lesser expectation of privacy than the general public, but are still entitled to protections of article I, section 7 of the Washington Constitution and the Fourth Amendment of the United States Constitution. State v. Winterstein, 167 Wn.2d 620, 628-29, 220 P.3d 1226 (2009); Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987).[2] The legislature has codified the exception to the warrant requirement for persons on community custody in RCW 9.94A.631(1) which states, "If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property."

It is constitutionally permissible for a CCO to search an individual based only on a well-founded or reasonable suspicion of a probation violation, rather than a warrant supported by probable cause. State v. Cornwell, 190 Wn.2d 296, 302, 412 P.3d 1265 (2018). Search of an individual's property, however, requires a CCO to reasonably believe that the property has a nexus with the suspected probation violation. Cornwell, 190 Wn.2d at 306. Requiring a nexus between the suspected probation violation and the property searched, "protects the privacy and dignity of individuals on probation while still allowing the State ample supervision." Cornwell, 190 Wn.2d at 306.

In Cornwell, CCO Grabski's search of Cornwell's car exceeded its lawful scope because the only suspected probation violation was Cornwell's failure to report.

---

[2] Godwin submitted a pro se statement of additional grounds pursuant to RAP 10.10. Godwin contends that while on community custody, he was in partial confinement and therefore had diminished constitutional privacy rights. Once Godwin was arrested, he contends that he was in total confinement and his constitutional privacy rights were fully reinstated and therefore his pickup truck was fully protected by the Fourth Amendment. Godwin does not cite any legal authority to support this contention and we find none.

Cornwell, 190 Wn.2d at 297.  Our Supreme Court rejected the State's argument in Cornwell that "any probation violation warrants a search of all the individual's property, regardless of whether it is likely to contain any evidence of the alleged violation." Cornwell, 190 Wn.2d at 302.  CCO Grabski explained that he searched Cornwell's vehicle because "Cornwell 'ha[d] a felony warrant for his arrest . . . in violation of his probation [and he was] driving the vehicle." Cornwell, 190 Wn.2d at 306.  The CCO testified that "he was looking for unrelated probation violations because he searched the vehicle to 'make sure there [were] no further violations of his probation.'" Cornwell, 190 Wn.2d at 306.  The court found that the search was an unconstitutional "fishing expedition" and concluded there must be a nexus between the property searched and the probation violation being investigated.  Cornwell, 190 Wn.2d at 307.

First, we address Godwin's assignments of error to the trial court's findings of fact.  The evidence from the suppression hearing supports Woodruff's belief that evidence of drug use would be found in the pickup truck because Godwin stated he failed to report because of he was using methamphetamine.  Godwin's statement coupled with his attempt to distance himself from the pickup truck both support Woodruff's belief that there were drugs in the pickup truck.  Woodruff looked in through the window of the pickup truck and saw personal property that he believed belonged to Godwin.  The evidence presented at the suppression hearing supports the trial court's findings of fact.

Next, we address whether the pickup truck and its contents have a nexus with the suspected probation violation of using or possessing illegal drugs.  Woodruff had an arrest warrant for Goodwin for failure to report.  After Godwin's arrest, Woodruff read

him the Miranda warnings. Godwin agreed to talk and admitted he had been using methamphetamine. When officers approached the pickup truck, Godwin exited and quickly moved away from the pickup truck. The court concluded that this was an attempt to distance himself from the pickup truck. Godwin's admission and attempt to distance himself from the pickup truck as officers approached him, provided a nexus to search Godwin's pickup truck. The trial court did not err in its conclusions of law.

Godwin analogizes to the facts in State v. Jardinez, 184 Wn. App. 518, 338 P.3d 292 (2014), arguing that Woodruff had no actual or articulable facts to suggest that Godwin was storing methamphetamine in the pickup truck. Jardinez failed to report for a meeting and admitted marijuana use, both of which were violations of his conditions of release. Jardinez, 184 Wn. App. at 521. The CCO used those violations as a basis to search Jardinez's iPod, where the CCO found a photo of Jardinez with a firearm. 184 Wn. App. at 528. During the suppression hearing, the CCO admitted that "the iPod interested him because parolees occasionally take pictures of themselves with other gang members or 'doing something they shouldn't be doing.'" Jardinez, 184 Wn. App. at 521. The CCO did not search the iPod because he believed he would find evidence of Jardinez's failure to report for a meeting or marijuana use, rather the CCO searched it because believed he would find evidence of other violated conditions. Division Three of this court affirmed the trial court's suppression of the firearm, concluding that RCW 9.94A.631 did not authorize the CCO's warrantless search of the iPod. Jardinez, 184 Wn. App. at 530. Cornwell discussed and approved the outcome of Jardinez. Cornwell, 190 Wn.2d at 304-06. Cornwell specifically disavowed the type of "fishing expedition" that occurred in Jardinez. Cornwell, 190 Wn.2d at 307.

While Jardinez and Godwin violated similar community custody conditions, the area searched, evidence searched for, and the articulated reasons for the search differ. Unlike Jardinez, Godwin admitted using methamphetamine and Woodruff believed that Godwin was using his pickup truck to store drugs. Thus, under the facts of this case, the nexus requirement was satisfied.

We affirm.

_Mann, C.J._

WE CONCUR:

_Bowman, J_          _Hazelrigg, J_