# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59648-2-II |
| Respondent, | |
| v. | |
| JOHN PHI TRUONG, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – John Phi Truong appeals the trial court's order denying his CrR 7.8(b) motion, in which he sought to invalidate his convictions of unlawful possession of a controlled substance with intent to deliver and first degree unlawful possession of a firearm.

At the time of his convictions, Truong was on community custody for an unlawful possession of a controlled substance (UPCS) conviction. Law enforcement discovered the controlled substances and a firearm after Department of Corrections (DOC) officers searched the garage in Truong's mother's house, where Truong had a bedroom. The search was conducted pursuant to RCW 9.94A.631(1), which gave DOC authority to conduct a warrantless search of an offender's residence based on "reasonable cause to believe that [the] offender has violated a condition or requirement of [his/her] sentence." Officers also believed that Truong's mother had given them permission to search the garage.

Truong's UPCS conviction was vacated under *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). In his CrR 7.8(b) motion, Truong argued that vacation of the UPCS conviction meant that DOC did not have authority to search the garage and therefore the search was unlawful. Truong also submitted an affidavit from his mother, in which she stated that she did not give consent to the law enforcement officers to search her garage. Truong claimed that the vacation order and the affidavit constituted newly discovered evidence under CrR 7.8(b)(2).

We hold that (1) the order vacating Truong's UPCS conviction did not entitle Truong to relief because DOC had authority to search Truong's residence even though *Blake* had ruled that the UPCS statute was unconstitutional; (2) Truong's mother's affidavit did not constitute newly discovered evidence because in light of our first holding, Truong cannot show that the affidavit would have changed the result at trial; and (3) the findings of fact and conclusions of law entered by the trial court were superfluous, so we decline to address Truong's challenges to them. Accordingly, we affirm the trial court's order denying Truong's CrR 7.8(b) motion.

FACTS

*Background*

In August 2018, Truong lived in his mother's garage, which had been converted into a bedroom. One day, Truong, Torey Petersen, and Truong's girlfriend used drugs and spent the night in the garage. The next morning, Truong grew angry when he discovered that some of his drugs were missing. He produced a gun and scared Petersen. Petersen contacted his mother, who called law enforcement.

Officers from DOC and the Longview Police Department arrived at the house. Truong's mother gave DOC officers permission to search the house. DOC officers searched the house but did not find Truong inside. They then heard movement inside the garage, and officers assembled

in front of the garage door. The garage door opened, and Truong sprinted out. Truong was arrested by DOC officers, who found a scale with drug residue on him.

DOC officers began to search the garage pursuant to RCW 9.94A.631(1), which gives DOC authority to conduct a warrantless search of a probationer's "person, residence, automobile, or other personal property" based on "reasonable cause to believe that [the] offender has violated a condition or requirement of [his/her] sentence." DOC believed that Truong had violated a condition of his community custody by failing to provide notice of a change of address. There was an arrest warrant for Truong based on his alleged failure to update his address.

During DOC's search of the garage, a Longview police officer observed a bag hanging from the rafters. The Longview Police obtained a warrant to search the bag, and discovered a safe inside. The safe contained a gun, ammunition, methamphetamine, and heroin, among other things.

Truong was charged with two counts of unlawful possession of a controlled substance with intent to deliver, first degree unlawful possession of a firearm, and harassment. The case proceeded to a jury trial, where Truong was convicted of possession with intent to deliver methamphetamine, with school zone and firearm enhancements, and first degree unlawful possession of a firearm. Truong was sentenced to 180 months confinement.

In June 2021, Truong filed a motion for reconsideration for resentencing based on the Supreme Court's decision in *Blake*, 197 Wn.2d 170. This court granted Truong's motion and remanded to the trial court for resentencing.

Truong was resentenced to 70 months in confinement. Truong appealed his sentence, arguing that the sentencing court failed to meaningfully consider his youth and upbringing as

mitigating factors in evaluating his request for an exceptional sentence downward. This court affirmed his sentence.

In March 2023, Truong filed a motion to vacate his convictions under CrR 7.8(b), arguing that the State unlawfully found the controlled substances and gun because his *Blake* conviction had been vacated and there no longer was legal authority to support the search. He also submitted an affidavit from his mother. The affidavit was dated and notarized in November 2021. Truong also submitted a personal affidavit with his CrR 7.8(b) motion. Truong argued that the order vacating his UPCS conviction and his mother's affidavit constituted newly discovered evidence under CrR 7.8(b)(2).

The trial court held a hearing on Truong's CrR 7.8(b) motion. Truong stated,

[T]he basic argument is that [Truong] was on DOC for a possession of drugs charge, which was vacated due to the *Blake* decision, and he provided that Order vacating that from his record. So, he was illegally on probation, and that – the reason – being on probation was the whole reason that justified a search warrant into his house. So, it was an illegal search, because all of the basis for the search was on a vacated judgment for possession. So, it's the fruit of the poisonous tree doctrine that, you know, because of the illegal search, all the evidence should be suppressed after that, which there was some evidence in the safe, which was – justified the conviction.

Rep. of Proc. (RP) at 24-25.

Regarding Truong's mother's affidavit, the State argued that Truong failed to prove any of the CrR 7.8(b)(2) factors that are required to prove newly discovered evidence. The State pointed out that at trial there was evidence that Truong's mother consented to the search, that Truong's mother could have been a witness at the trial, and that her affidavit was not newly discovered evidence because it could have been discovered by the exercise of due diligence.

In an oral ruling, the trial court stated,

So, we have, really, two different issues here. We have an issue that: one, he's claiming that there's new evidence that needs to be presented. I would agree that it does not meet the factors for 7.8, because it's not newly discovered evidence.

4

Mom was there. There's nothing that indicates that she was not available to testify at trial, or to provide a statement to anyone associated with this case when it went to trial. So, I think any information about mom's testimony would not meet the 7.8 factor, so that portion would be denied.

Moving on to the DOC portion that but for him being on supervision for a simple possession case, there wouldn't have been the next steps and the charge found. As [defense counsel] indicate[d], fruit from the poisonous tree. Generally speaking, that's a great argument, and often applies to situations. Here, we have at least three, if not – I think there's more case law, but the *Matter of Pleasant*, *Brockob*, *Afana*, several different cases that show that if it was valid at the time, and no one had a reason to believe it not being valid, that it doesn't matter that it's subsequently overturned.

So, I don't think there's an argument for being on DOC for what later became an unconstitutional statute, when it was considered constitutional and was in effect applies here. So, I'm going to deny the Motion.

RP at 29-30.

In December 2023, the trial court entered findings of fact and conclusions of law in support of its order denying Truong's CrR 7.8(b) motion.

Truong appeals the trial court's order denying his CrR 7.8(b) motion.

ANALYSIS

A.    FAILURE TO COMPLY WITH CRR 7.8(c)

The State argues that the superior court failed to comply with the requirements of CrR 7.8(c) when it retained and decided Truong's motion to vacate his convictions. However, the State invited any error.

A motion to vacate a criminal judgment and sentence is a collateral attack. RCW 10.73.090(2). A collateral attack filed in the superior court is governed by CrR 7.8 and must comply with the procedural requirements of CrR 7.8(c). *State v. Molnar*, 198 Wn.2d 500, 508-09, 497 P.3d 858 (2021). CrR 7.8(c)(2) provides:

The court shall transfer a motion filed by a defendant to the Court of Appeals for consideration as a personal restraint petition unless the court determines that the

5

motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that they are entitled to relief or (ii) resolution of the motion will require a factual hearing.

The State now claims that Truong's motion should have been transferred to this court as a PRP.

But the State conceded in the trial court that Truong had made a sufficient showing under CrR 7.8(c)(2)(i) to keep the case in the trial court rather than transferring the motion to the Court of Appeals. Therefore, we decline to address the State's claim of procedural error.

B.     AUTHORITY FOR DOC SEARCH

Truong argues that DOC officers violated his constitutional rights when they searched the garage because *Blake* invalidated the statute criminalizing UPCS, eliminating the authority officers had to search his residence. The State argues that law enforcement had authority to search the garage because the criminalization statute was valid at the time and law enforcement had separate authority to search under RCW 9.94A.631(1). We agree with the State.

1.     Legal Principles

In *Blake*, the Supreme Court held that former RCW 69.50.4013 (2017), a statute that criminalized unintentional, unknowing possession of controlled substances, was unconstitutional. 197 Wn.2d at 183. However, the Supreme Court has rejected the argument that *Blake* made UPCS a nonexistent crime. *State v. Olsen*, 3 Wn.3d 689, 699-701, 555 P.3d 868 (2024). *Blake* did not render RCW 69.50.4013 "a nullity, void ab initio." *Id.* at 701.

DOC has authority to conduct warrantless searches of offenders under community custody supervision. RCW 9.94A.631(1) states,

> If an offender violates any condition or requirement of a sentence, a community corrections officer [CCO] may arrest or cause the arrest of the offender without a warrant, pending a determination by the court or by the department. If there is reasonable cause to believe that an offender has violated a condition or requirement

6

of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property.

Under this statute, "a CCO to search an individual based only on a 'well-founded or reasonable suspicion of a probation violation.' " *State v. Cornwell*, 190 Wn.2d 296, 302, 412 P.3d 1265 (2018) (quoting *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009).

The subsequent invalidation of a statute does not retroactively affect the existence of probable cause for a warrant based on that statute. *State v. Moses*, 22 Wn. App. 2d 550, 556, 512 P.3d 600 (2022). "This is true unless the law is 'so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.' " *Id*. at 557 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S. Ct. 2627, 61 L.Ed.2d 343 (1979)).

In *Moses*, police officers contacted the defendant while investigating a suspicious vehicle near a house where police knew drug activity was to take place. 22 Wn. App. 2d at 553. When the owner of the vehicle exited the car, the officer noticed drug paraphernalia in the car. *Id*. The officer deployed a K-9, which alerted to drugs. *Id*. The officer then applied for a warrant to search the car. *Id*. The warrant judge determined that probable cause existed under former RCW 69.50.4013 for unlawful possession of controlled substances and approved the search warrant. *Id*. at 553-54. While searching the vehicle, officers found a firearm. *Id*. at 554. The State charged the defendant with first degree unlawful possession of a firearm. *Id*.

The defendant moved to suppress the firearm evidence, arguing that the warrant lacked probable cause because it authorized a search for evidence of possession of controlled substances under former RCW 69.50.4013, which the Supreme Court recently had found unconstitutional in *Blake*. *Id*. The trial court ruled that *Blake* applied retroactively and that because the State could

not prosecute the defendant for UPCS, the possibility that UPCS had been committed was improper grounds for issuing a search warrant. *Id*. at 555.

Division One of this court reversed. *Id.* at 561. The court reasoned that the officer "relied on the statute criminalizing possession of controlled substances only as much as it contributed to the facts and circumstances supporting probable cause to search. And [the officer's] reliance on the statute was reasonable because former RCW 69.50.4013(1) was presumptively valid in February 2017." *Id.* The court pointed out that before *Blake*, the Supreme Court twice had held that former RCW 69.50.4013(1) was valid. *Id.*

Division Three reached the same result in *In re Personal Restraint of Pleasant*, 21 Wn. App. 2d 320, 509 P.3d 295 (2022). An officer made a traffic stop and then obtained a search warrant for the vehicle after a police canine alerted to narcotics. *State v. Pleasant*, No. 35645-1-III, slip op. at 2-3 (Wash. Ct. App. October 24, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/356451_unp.pdf.[1] Officers executing the search discovered large amounts of cocaine and prescription drugs. *Id.* at 3. In a PRP, the defendant argued that probable cause did not support the search warrant for his vehicle because it was based on former RCW 69.50.4013, which the Supreme Court had found unconstitutional in *Blake*. *Pleasant*, 21 Wn. App. 2d at 339.

The court disagreed, stating that "an arrest is not rendered 'invalid for lack of probable cause simply because the criminal statute a defendant is arrested under is later found to be unconstitutional.' " *Id*. at 339 (quoting *State v. Potter*, 129 Wn. App. 494, 497, 119 P.3d 877 (2005)). The defendant relied on *State v. White*, 97 Wn.2d 92, 640 P.2d 1061 (1987). But the

---

[1] The facts regarding the stop and search are not recited in *In re Personal Restraint of Pleasant*. These facts come from the opinion on the direct appeal.

court pointed out that in *White*, although the "statute on which White's arrest was based had not yet been invalidated, an ordinance with substantially similar language had been found unconstitutional." *Pleasant*, 21 Wn. App. 2d at 339. The court stated, "*White* holds that a statute not yet judicially determined to be unconstitutional may be found 'so grossly and flagrantly unconstitutional' *by virtue of a prior dispositive judicial holding* that it may not serve as the basis of a valid arrest." *Id*. at 339-40 (quoting *White*, 97 Wn.2d at 103).

By contrast, when the warrant in *Pleasant* was issued in 2016, there were no cases from Washington courts giving any reason to believe that former RCW 69.50.4013 would be invalidated. *Pleasant*, 21 Wn. App. 2d at 340. Instead, at the time the detective applied for the search warrant the Supreme Court twice had reaffirmed the validity of the statute. *Id*. at 340-41. As result, the court held that the suspected violation of former RCW 69.50.4013 provided probable cause for the search warrant. *Id.* at 341.

In *State v. Balles*, Division Three addressed the validity of a DOC arrest warrant in light of *Blake*. 32 Wn. App. 2d 356, 359, 556 P.3d 698 (2024). In that case, the defendant failed to report to his CCO as directed, resulting in the issuance of a warrant for his arrest. *Id.* at 360. One month after the Supreme Court's decision in *Blake*, DOC officers and other law enforcement attempted to serve the warrant on the defendant related to his failure to report to his CCO. *Id.* Upon entering the defendant's home, officers found drugs and ammunition. *Id*. at 360-61. Law enforcement obtained a search warrant for the defendant's home, and found a stolen firearm and more drugs, among other things. *Id*. at 361.

The defendant was charged with two counts of possession of a controlled substance with intent to deliver, first degree unlawful possession of a firearm, and possession of a stolen firearm. *Id*. Subsequently, his prior UPCS conviction, for which he was serving community custody, was

vacated and dismissed pursuant to *Blake*. *Id*. The trial court granted the defendant's motion to suppress the evidence seized during the execution of his DOC arrest warrant. *Id*. at 361-62.

The appellate court noted that it was undisputed that DOC had authority to issue the arrest warrant at the time it was issued. *Id.* at 366. The question was whether the warrant remained valid and could be executed after *Blake* was decided. *Id.* The court emphasized that *Blake* did not render UPCS a nonexistent crime; it was a valid crime that later was invalidated. *Id.* at 367. In addition, although defendants convicted of UPCS were entitled to have their convictions vacated, *Blake* did not *automatically* vacate them. *Id.* And the court stated, "[I]t has long been understood that the subject of a court order must comply with the order until relieved of the obligation to do so." *Id.*

As a result, the defendant remained on community custody until his UPCS condition was vacated – which was four months after the arrest warrant was executed. *Id.* at 368. The court stated, "In other words, while *Blake* voided [the defendant's] conviction, he was still subject to the terms of his judgment and sentence until his conviction was vacated." *Id*. Therefore, the court reversed the suppression order. *Id.* at 369.

2.   Analysis

We conclude that *Moses*, *Pleasant*, and *Balles* support a holding that DOC's search of Truong's garage was lawful. Here, the DOC officers had authority under RCW 9.94A.631(1) to search the garage because they had reasonable cause to believe that Truong had violated a condition of his sentence when he failed to update his address. Their reliance on the UPCS statute "was reasonable because former RCW 69.50.4013(1) was presumptively valid" in August 2018. *Moses*, 22 Wn. App. 2d at 561. In addition, Truong's UPCS conviction was valid at the

10

time the search took place. *Balles*, 32 Wn. App. 2d at 367. And therefore, Truong remained on valid community custody at the time of the search. *Id.* at 368.

Truong argues that his community custody sentence was illegal in light of *Blake*, and an illegal sentence cannot provide authority for a search. He primarily relies on *State v. Wallin*, 125 Wn. App. 648, 105 P.3d 1037 (2005). In that case, the defendant was convicted of sex offenses involving minors. *Id.* at 651. The defendant served his sentence, which included one year of community supervision. *Id.* After he violated the terms of his community custody, the trial court modified the length of his custody term, extending it to 10 years. *Id.* The parties believed that the trial court had authority to extend the defendant's community custody. *Id.* at 652.

DOC officers relied on the terms of the defendant's community custody to conduct a warrantless search his home and computer. *Id.* The officers found evidence that the defendant had violated the terms of his community custody and relied on that information to obtain a warrant to search his home. *Id.* Officers discovered evidence that the State later used to charge the defendant with first degree rape and child molestation, among other things. *Id.* at 653. On appeal, the defendant argued that the order extending his community custody was invalid on its face, and provided no authority for the search. *Id.* at 654.

The court concluded that the order extending the length of the defendant's community custody term to 10 years was invalid because the trial court lacked authority to do so. *Id.* at 656-57. As a result, the defendant as a matter of law no longer was on community custody when the search was conducted. *Id.* at 662. The court held that this fact meant that the warrantless search was unconstitutional. *Id.*

This case is different than *Wallin*. Here, Truong's UPCS conviction was not invalid from its inception as was the order in *Wallin*. Law enforcement relied on a statute that was valid at the

time of the search and remained valid until *Blake* was decided. *Balles*, 32 Wn. App. 2d at 367. Truong argues that his UPCS conviction was a nullity when the search was conducted, but the Supreme Court has rejected this argument. *Olsen*, 3 Wn.3d at 699-701.

Truong also argues that *Moses* and *Pleasant* do not apply because they involved a probable cause determination, when this case involved a reasonable cause determination under RCW 9.94A.631(1). But probable cause determinations require a more exacting standard than the statutory requirement of reasonable cause, which requires only a " 'well-founded suspicion that a violation has occurred.' " *State v. Jardinez*, 184 Wn. App. 518, 524, 338 P.3d 292 (2014) (quoting *State v. Massey*, 81 Wn. App. 198, 200, 913 P.2d 424 (1996)). Truong does not explain why a rule regarding probable cause would not apply equally to reasonable cause. Although reasonable cause standards may not satisfy the constitutional probable cause requirements for warrants, they certainly are analogous.

We hold that law enforcement had authority under RCW 9.94A.631(1) to search Truong's residence because law enforcement relied on the community custody only to the extent that it contributed to the circumstances supporting reasonable cause to search, and law enforcement's reliance on former RCW 69.50.4013(1) was reasonable because the statute was presumptively valid at the time. Accordingly, we reject Truong's argument.

C.     TRUONG'S MOTHER'S AFFIDAVIT

Truong argues that the trial court erred when it declined to hold an evidentiary hearing under CrR 3.6 and CrR 7.8 to determine whether his mother consented to the search of the garage. Truong argues that his mother's affidavit was newly discovered evidence and entitled him to relief from the judgment. We disagree.

CrR 7.8(b) states, "[o]n motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons: . . . (2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.5."

To prevail on a CrR 7.8(b)(2) motion, the defendant must show the evidence " '(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching.' " *State v. Wood*, 19 Wn. App. 2d 743, 775, 498 P.3d 968 (2021) (quoting *State v. Williams*, 96 Wn.2d 215, 222-23, 634 P.2d 868 (1981)).

Truong's argument is based on the assumption that DOC did not have authority to search the garage under *Blake*, and therefore the only possible authority for the search was his mother's consent. But we hold otherwise above – DOC had authority to search the garage and that search was lawful. Therefore, whether Truong's mother gave consent is immaterial and would not have probably changed the result of the trial.

We hold that Truong's mother's affidavit did not constitute newly discovered evidence under CrR 7.8(b)(2), and therefore the trial court did not err in denying his motion.

E.    CHALLENGE TO FINDINGS OF FACT

Truong assigns error to some of the trial court's findings of fact. The trial court entered findings of fact two months after the CrR 7.8 hearing. But the hearing involved no testimony, exhibits, sworn declarations or other fact finding. There is no authority requiring a trial court to enter findings of fact when denying a CrR 7.8(b) motion. Accordingly, we hold that the trial court's factual findings are superfluous, and we decline to address Truong's arguments challenging them.

CONCLUSION

We affirm the trial court's order denying Truong's CrR 7.8(b) motion.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
VELJACIC, A.C.J.

_____
PRICE, J.