# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56129-8-II |
| Appellant, | |
| v. | |
| DAVID WAYNE TURNER, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, C.J.—Officers pulled over David Wayne Turner because he was on probation and had an active warrant for failing to report to his community corrections officer. Turner continued to drive for approximately 20 seconds before stopping the car, bypassing areas where he could safely pull over. During that time, he appeared to be moving around and trying to conceal something. A community corrections officer searched the area of the car that was within Turner's reach and found plastic baggies in a backpack behind the center console. The officer then expanded his search and found various controlled substances and a firearm in the trunk.

Turner moved to suppress the evidence seized from the trunk, arguing his only known probation violation was for failing to report and the officer did not have reasonable cause to believe Turner committed any additional violations that would justify a warrantless search of his entire car. The trial court granted Turner's motion, suppressed the evidence found in the trunk, and dismissed the case without prejudice.

On appeal, the State argues the trial court erred when it granted Turner's motion to suppress because a community corrections officer can require an offender to submit to a search if the officer

has a reasonable and articulable suspicion that the offender has violated a condition of community custody and there is a nexus between the suspected violation and the property searched. The State contends the community corrections officer here had reasonable suspicion to believe Turner was violating the condition prohibiting him from possessing controlled substances. Further, there was a nexus between Turner's car and the suspected violation.

We agree with the State and reverse both the trial court's order suppressing the evidence and its order dismissing the charges against Turner.

FACTS

I. BACKGROUND

On March 29, 2021, community corrections specialist Brett Curtright was in Centralia with Detective Tyson Shenkel. They were specifically searching for a person named Kermit. While searching for Kermit, Curtright and Shenkel saw Turner leave a house and get into "an unoccupied and parked vehicle." Clerk's Papers (CP) at 87. Turner was on probation and had an active warrant for failing to report to his community corrections officer.

Curtright "was familiar with" Turner because he had come into contact with and arrested Turner three times in 2020. *Id.* All three times, controlled substances were involved. The most recent contact had occurred six months prior to this arrest, in September 2020. Because of these prior contacts, Curtright was aware that it was a condition of Turner's probation not to possess or consume controlled substances.[1]

---

[1] Our record does not include the specific conditions of Turner's community custody, but Turner does not contest that he was prohibited from possessing or consuming controlled substances.

The officers decided they would arrest Turner on the warrant after he left the house. Curtright confirmed that the warrant was active but did not review the basis for it.

Turner began to drive and turned right onto Old Highway 99, a two-lane highway. The officers initiated a traffic stop once they turned onto Old Highway 99 behind Turner. According to Curtright, this portion of the highway had "a really large shoulder" where Turner could have pulled over safely, followed by some gravel parking lots for businesses on the right-hand side of the road. Verbatim Report of Proceedings (VRP) (June 28, 2021) at 25. But rather than stop at these places, Turner "continued roughly a quarter of a mile" before turning left into the parking lot of the Great Wolf Lodge. CP at 87. He stopped "approximately twenty seconds" after the officers initiated the stop. *Id.* According to a Google Maps printout that Turner submitted, he drove a total of 0.6 miles and 2 minutes from the residence before stopping at Great Wolf Lodge. The officers then detained Turner "without incident," and a search of his person did not reveal anything of evidentiary value. CP at 88. He was handcuffed and moved away from the car.

Before Turner stopped the car, he was "moving around in the vehicle" in a way that made Curtright suspect "Turner might be trying to conceal something." CP at 87. Shenkel did not document any furtive movements in his report.

"[B]ecause Mr. Turner did not immediately stop his vehicle along the highway, but rather waited until he got to a parking lot," Curtright requested approval from a supervisor to search Turner's car. CP at 88. He also suggested that Turner's "movements in the car" provided a nexus to support the search. VRP (June 28, 2021) at 73. A supervisor approved Curtright to search the "'[l]unge area'" of the car, meaning "the immediate area where [Turner] can reach from the driver's seat." *Id.* at 28. Directly behind the center console, Curtright found a backpack with plastic

baggies inside it. He recognized the baggies "from [his] training and experience as items that are used for trafficking narcotics." *Id.* at 29.

Curtright then expanded his search from the lunge area and eventually searched the trunk of the car. The record does not show that Curtright obtained approval from a supervisor before expanding his search, nor did he obtain a warrant. He found various controlled substances and a firearm in the trunk.

The State charged Turner with three counts of unlawful possession of a controlled substance with intent to deliver based on his possession of three different controlled substances. Each of these three counts "further alleged that during the commission of this offense, the defendant or an accomplice was armed with a firearm." CP at 4. The State separately charged Turner with first degree unlawful possession of a firearm.

## II. MOTION TO SUPPRESS

Turner moved to suppress "all evidence obtained by the government during the unlawful warrantless search of the vehicle." CP. at 6. He argued, "The officers did not have an articulable and reasonable suspicion that he was engaged in criminal activity nor that the place searched would yield evidence of such a crime." CP at 11. Turner maintained that because his arrest warrant was for a failure to report and the State's search was based on "some generalized suspicion that he was violating conditions of his sentence during that ten to twelve seconds" before he stopped the car, Curtright should have gotten a search warrant. VRP (June 28, 2021) at 78.

The State acknowledged that Turner's failure to report did not support a warrantless search of his car, but it argued that reasonable cause was established under RCW 9.94A.631(1) based on

Turner's failure to promptly yield, furtive movements inside the car, and the nature of his prior contacts with Curtright.

Curtright testified at the hearing consistent with the facts stated above. When describing the initial search of the passenger compartment, he testified, "[A]ll I was really looking at was the lunge area because that's where his movements were while I was . . . attempting to stop him." *Id.* at 28. "I continued my search based on the fact of the baggies that were . . . right around where he was reaching." *Id.* at 29. Curtright explained that if he had not found anything of possible evidentiary value when searching the lunge area, he would not have expanded his search to the rest of the car. And if Turner had pulled over more promptly, he would not have had a basis to search the car at all.

After the evidentiary hearing, the trial court put its ruling on the record. The trial court concluded that the search of the passenger area was appropriate to ensure officer safety but the search of the trunk was conducted without lawful authority. In explaining its decision, the trial court commented that typically officers who wish to "proceed further in their searches" will call the court and seek a warrant in order to "request access to the trunk." VRP (July 16, 2021) at 7. The trial court concluded the search of the car's trunk was unlawful because the officers failed to express "a reasonable articulable suspicion of criminal activity that would allow them to get into the trunk." *Id.* at 8.

In its written findings of fact and conclusions of law, the trial court noted that Curtright "was familiar with Mr. Turner from three previous work-related contacts" in May, June, and September 2020. CP at 87. "In each [of] those prior contacts, . . . [Curtright] believed Mr. Turner was in possession of a controlled substance." *Id.*

The trial court found that when Turner turned onto Old Highway 99, the officers turned behind him and "activated the emergency lights to initiate a traffic stop within a short period of time." *Id.* "Turner did not immediately stop along the side of Old Highway 99, but continued roughly a quarter of a mile until he stopped his vehicle at the Great Wolf Lodge parking lot." *Id.* "[Curtright] estimated that the total time that lapsed between when the emergency lights were activated and when Mr. Turner stopped the vehicle [was] . . . approximately twenty seconds." *Id.* "[Curtright] testified that he saw Mr. Turner moving around in the vehicle during the twenty seconds before he brought the vehicle to a stop . . . [and] suspected Mr. Turner might be trying to conceal something." *Id.*

The trial court also found that after Turner stopped the car, he was detained "without incident." CP at 88. The officers arrested him based on the warrant and searched his person, and nothing of evidentiary value was discovered. Curtright "then conducted a warrantless search of the vehicle. During the search, small Ziploc-style baggies were located inside of a backpack behind the center console area of the vehicle. In the trunk, narcotics were located inside of a black purse and a firearm was also found." *Id.* "When the vehicle was searched, Mr. Turner had been removed from the vehicle and was detained in handcuff[]s away from the vehicle." *Id.*

The trial court found, based on Curtright's testimony, that Curtright searched Turner's car based on the following factors:

> a. [H]is knowledge that Mr. Turner was not in compliance with his [Department of Corrections] reporting requirements;
> b. Mr. Turner['s] behavior, making furtive moments in the vehicle, as he failed to yield which is indicative of attempting to hide an item;
> c. Mr. Turner's failure to yield for approximately 1/4 mile, which was estimated to be about 20 seconds[;] and
> d. . . . his 3 prior contacts with Mr. Turner, all of which included the discovery of narcotics in Mr. Turner's possession.

6

*Id.* The trial court did not include a finding explaining that Curtright expanded his search to the trunk because he found plastic baggies when searching the lunge area.

The trial court concluded Curtright "did not have reliable information to provide an articulable suspicion that Mr. Turner was engaged in any particular criminal activity . . . [or] violating any particular condition of probation, other than the existence of the arrest warrant." CP at 89. It concluded that neither Turner's failure to report, nor his furtive movements as alleged by Curtright, nor his failure to yield, alone, gave rise to a reasonable articulable suspicion that would have supported a search of the vehicle. Additionally, Curtright's knowledge from his prior contacts with Turner was "stale," and "a warrantless search based on knowledge that Mr. Turner had, in the past, been involved in criminal activity was not justified under these circumstances." CP at 90.

Ultimately, the trial court concluded Curtright's "search of the lunge area and passenger compartment was lawful for officer safety reasons," but the warrantless search of the trunk was unlawful. CP at 89. After concluding that the warrantless search of the trunk was conducted without authority of law, in violation of article I, section 7 of the Washington Constitution, the trial court ordered all evidence seized from the trunk of the car must be suppressed, including the controlled substances and firearm. "Based on the State's admission that all evidence of the charged criminal activity was in the trunk of the vehicle," the trial court dismissed the charges against Turner without prejudice. CP at 90.

The State appeals the trial court's order suppressing the evidence and its order dismissing the charges against Turner.

ANALYSIS

WARRANTLESS SEARCH OF TURNER'S CAR

The State argues the trial court applied the wrong standard and erred when it granted Turner's motion to suppress. The State relies on Turner's failure to promptly yield and furtive movements to support Curtright's search of the car. It contends, "The fact that each time . . . Curtright had encountered Turner narcotics were involved further justified the reasonableness of . . . Curtright's suspicion that evidence of a probation violation would be found in the vehicle." Br. of Appellant at 16. After Curtright observed plastic baggies behind the center console, "he had a reasonable and articulable suspicion that further evidence of a probation violation may be found in the remainder of the vehicle." *Id.* at 17. In sum, "he had a sufficient reasonable suspicion that Turner was possessing controlled substances and there was a nexus between that suspicion [and] the search of the vehicle." *Id.* at 21-22.

The State challenges only finding of fact 14, which it says contains an "incomplete" list of the bases Curtright listed to justify the search. *Id.* at 2. The State does not specifically challenge any other findings.

Relying primarily on *State v. Cornwell*, 190 Wn.2d 296, 412 P.3d 1265 (2018), Turner argues the trial court correctly suppressed the evidence after concluding there was an insufficient nexus between the search of the trunk and his probation violation of failure to report. According to Turner, "[t]he officer was aware of no actual, articulable facts to suggest Mr. Turner had drugs in the car or trunk, or that drugs or a gun would be found in the car." Br. of Resp't at 7. And Turner's furtive movements "could physically not involve the trunk area of the car." *Id.* at 15.

When reviewing a trial court's decision on a motion to suppress, we consider whether the court's findings are supported by substantial evidence and whether those findings support the court's conclusions. *State v. Rooney*, 190 Wn. App. 653, 658, 360 P.3d 913 (2015). "Unchallenged findings of fact are verities on appeal." *Id.* We review the trial court's conclusions of law de novo. *Id.*

Article I, section 7 states, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." This constitutional provision provides "a robust privacy right" and generally prohibits warrantless searches. *Cornwell*, 190 Wn.2d at 301. "However, individuals on probation are not entitled to the full protection of article I, section 7." *Id.* "[T]he State may supervise and scrutinize a probationer or parolee closely" because they have been sentenced to confinement but "are serving their time outside the prison walls." *State v. Jardinez*, 184 Wn. App. 518, 523, 338 P.3d 292 (2014).

A.     Reasonable Cause Requirement

Because they are still in the State's custody, a person under Department of Corrections supervision "may be searched on the basis of a well-founded or reasonable suspicion of a probation violation," instead of a warrant supported by probable cause. *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009); *see also* RCW 9.94A.631(1) ("If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property."). This standard is comparable to the *Terry*[2]

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

reasonable suspicion standard. *Jardinez*, 184 Wn. App. at 524. The officer's suspicion of a probation violation must be based on specific and articulable facts and rational inferences. *Id.* "This threshold requirement protects an individual from random, suspicionless searches." *Cornwell*, 190 Wn.2d at 306.

The State argues the trial court applied the wrong standard when evaluating the lawfulness of the search. The trial court's comments from the bench about its experience with the duty phone suggest that the court may have been thinking in terms of a probable cause standard necessary to support a warrant when issuing its oral ruling. And it focused on whether Curtright articulated a reasonable suspicion that Turner was engaged in criminal activity, rather than a reasonable suspicion that Turner was violating a condition of his community custody. But in its *written* findings and conclusions, the trial court applied the correct standard and considered whether Curtright had "reliable information to provide an articulable suspicion that Mr. Turner was violating any particular condition of probation, other than the existence of the arrest warrant." CP at 89. We consider the trial court's written decision to be its "'ultimate understanding' of the issue presented." *State v. Dailey*, 93 Wn.2d 454, 459, 610 P.2d 357 (1980) (quoting *Diel v. Beekman*, 7 Wn. App. 139, 149, 499 P.2d 37 (1972), *overruled on other grounds by Chaplin v. Sanders*, 100 Wn.2d 853 (1984)).

We conclude Curtright had a reasonable and articulable suspicion that Turner possessed controlled substances and was violating an additional condition of his community custody beyond the failure to report. Curtright knew that Turner was on community custody and was not permitted to possess controlled substances as a condition of his community custody. He also knew that Turner had a history of possessing controlled substances in violation of his community custody

conditions. Within the prior year, Curtright had encountered Turner three times, and each time, Turner had possessed controlled substances.

After the officers activated their emergency lights, Turner continued for approximately a quarter of a mile and took at least 20 seconds to pull over, even though there were areas where Turner could have stopped on the right-hand side of the road. Additionally, Turner appeared to be "trying to conceal something" during this time. CP at 87. While the fact that Turner continued for approximately 20 seconds would not establish a well-founded and reasonable suspicion of a probation violation on its own, it was reasonable for Curtright to suspect that Turner was attempting to hide contraband when considering all of these facts together. Curtright had "reasonable cause to believe" Turner was violating a condition of his community custody, so the warrantless search of the lunge area was lawful under RCW 9.94A.631(1).[3]

Curtright originally limited his search to the area of the car that Turner could reach because he was searching for whatever Turner might have been trying to hide before stopping the car. In the area where Turner had been reaching, Curtright found empty Ziploc baggies, which he recognized as "items that are used for trafficking narcotics." VRP (June 28, 2021) at 29. This

---

[3] Although it was not challenged by either party, we note that the trial court erred when it concluded the "search of the lunge area and passenger compartment was lawful for officer safety reasons." CP at 89. Once the person who has been arrested is detained and distanced from the car, so that they can no longer access any contraband or weapons within the car, officer safety concerns cannot justify a search of the car. *See State v. Patton*, 167 Wn.2d 379, 384, 395, 219 P.3d 651 (2009). Here, the trial court found that "[w]hen the vehicle was searched, Mr. Turner had been removed from the vehicle and was detained in handcuff[]s away from the vehicle." CP at 88. This finding was not challenged and is therefore a verity on appeal. *Rooney*, 190 Wn. App. at 658. The trial court's conclusion that the "search of the lunge area and passenger compartment was lawful for officer safety reasons" was incorrect. CP at 89; *see Rooney*, 190 Wn. App. at 658.

discovery bolstered Curtright's suspicion that Turner was in possession of controlled substances in violation of his community custody conditions.

Because plastic baggies have lawful uses, "the mere possession of a few empty, unused plastic baggies" does not provide *probable cause* to search a car. *State v. Neth*, 165 Wn.2d 177, 185, 196 P.3d 658 (2008). But "[p]ossession of a number of small baggies may well create *reasonable suspicion* justifying further investigation." *Id.* at 185 n.3 (emphasis added). And when an individual is on probation, they may be required to submit to a search based only on "a well-founded or reasonable suspicion." *Winterstein*, 167 Wn.2d at 628. Here, Turner's possession of plastic baggies was one of several facts that, when combined, met the reasonable suspicion standard to support a search of the car under RCW 9.94A.631(1), including the trunk. The search of Turner's car was not random or suspicionless. *See Cornwell*, 190 Wn.2d at 306.

And although Turner's past violations alone could not have justified a search, it was reasonable for Curtright to consider that Turner had unlawfully possessed controlled substances on at least three separate occasions within the past year when evaluating all of the facts. The Supreme Court has recognized, "If a prior conviction, not to mention a prior arrest, should afford grounds for believing that an individual is engaging in criminal activity at any given time thereafter, that person would never be free of harassment, no matter how completely he had reformed." *State v. Hobart*, 94 Wn.2d 437, 446-47, 617 P.2d 429 (1980). But when an individual remains in community custody, the State has a strong interest in supervising that particular individual more closely to ensure both the individual's rehabilitation and the community's safety. *See, e.g.*, *State v. Olsen*, 189 Wn.2d 118, 128-29, 399 P.3d 1141 (2017) (discussing this interest where the individual was convicted of driving under the influence).

The Supreme Court has evaluated the reasonableness of a search of a probationer's property in light of the "facts and knowledge available to the officer at the time of the search." *Winterstein*, 167 Wn.2d at 630; *cf. Terry*, 392 U.S. at 21-22 ("[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S. Ct. 280, 69 L. Ed. 543 (1925))). Because of his prior contacts with Turner, Curtright had relevant knowledge of Turner's conditions of community custody, as well as Turner's violations of those conditions involving controlled substances within the prior year. Prior community custody violations alone would not support a search, but they are facts that can be considered when evaluating the totality of the circumstances. The trial court erred when it concluded that Curtright's knowledge from prior contacts with Turner was "stale" and could not justify a search, to the extent it was concluding that Curtright's knowledge could not be considered alongside other specific and articulable facts. CP at 97.

The trial court also erred when it concluded that Curtright "did not have reliable information to provide an articulable suspicion that Mr. Turner was violating any particular condition of probation, other than the existence of the arrest warrant." CP at 89. Turner had been found in possession of controlled substances in violation of his community custody conditions on three occasions within the past year, and Turner had moved around within his car and delayed stopping for approximately 20 seconds after the officers activated their emergency lights, despite having opportunities to safely pull over. Considering the totality of the circumstances, it was reasonable for Curtright to suspect that Turner possessed controlled substances in violation of his

13

community custody conditions. The discovery of plastic baggies behind the center console further bolstered Curtright's suspicion.

B.      Nexus Requirement

In addition to the reasonable cause requirement, there must be "a nexus between the property searched and the alleged probation violation." *Cornwell*, 190 Wn.2d at 306. The privacy right of the person on probation "is diminished only to the extent necessary for the State to monitor compliance with the particular condition that gave rise to the search." *Id.* at 304. Article I, section 7 prohibits "sweeping searches." *Id.* at 305. "Limiting the scope of a [community corrections officer's] search to property reasonably believed to have a nexus with the suspected probation violation protects the privacy and dignity of individuals on probation while still allowing the State ample supervision." *Id.* at 306.

In *Cornwell*, the defendant had borrowed a car from someone who wanted it back, and officers saw the car "outside a house suspected of being a site for drug sales and prostitution." *Id.* at 298. Cornwell was on probation and had an active warrant for failing to report to the Department of Corrections. *Id.* Officers planned to pull Cornwell over based on this outstanding warrant, not because they believed his car contained evidence of a further probation violation. *Id.* But before the officers activated their police lights, Cornwell pulled into a driveway and ignored police commands to stay in the car. *Id.* at 299. Despite being ordered to the ground, Cornwell attempted to run. *Id.* Officers detained Cornwell, found over $1,500 on his person, and summoned a community corrections officer who searched his car. *Id.*

The community corrections officer justified the search by saying, "'He's driving the vehicle, he has the ability to access to enter the vehicle, so I'm searching the car to make sure

there's no further violations of his probation.'" *Id.* The officer did not offer any other suspicion of a probation violation to justify the search, saying he "searched the vehicle *only* because Cornwell 'ha[d] a felony warrant for his arrest . . . in violation of his probation [and] [h]e's driving the vehicle.'" *Id.* at 306 (emphasis added) (alterations in original). The Supreme Court concluded that although the community corrections officer "may have suspected Cornwell violated other probation conditions, the only probation violation supported by the record" was his failure to report. *Id.* "[T]here is no nexus between property and the crime of failure to report," so the search was unlawful. *Id.*

Like the defendant in *Cornwell*, officers decided to pull Turner over because he had an active warrant for failing to report to his community corrections officer. But unlike in *Cornwell*, by the time Turner stopped his car, Curtright had a reasonable suspicion that Turner was violating an *additional* condition of his probation prohibiting him from possessing controlled substances. Because a specific additional probation violation was reasonably suspected, *Cornwell* does not determine the outcome here. *Cf. State v. Arreola*, 176 Wn.2d 284, 299, 290 P.3d 983 (2012) ("[A] police officer cannot and should not be expected to simply ignore the fact that an appropriate and reasonably necessary traffic stop might also advance a related and more important police investigation.").

The language of RCW 9.94A.631(1) broadly permits a search of "the offender's . . . automobile" upon reasonable cause to believe the offender has violated a condition of community custody. But the scope of this search must also be limited to the property that has a nexus with, or relation to, the suspected violation. *Cornwell*, 190 Wn.2d at 306. In other words, like with searches supported by probable cause, the nature of the suspected violation informs the appropriate scope

of the search. *Compare State v. Patton*, 167 Wn.2d 379, 395, 219 P.3d 651 (2009) (concluding that where the defendant was arrested on a warrant for failing to appear in court, "there was no basis to believe evidence relating to [the defendant's] arrest would have been found in the car"), *with State v. Parker*, 139 Wn.2d 486, 526, 987 P.2d 73 (1999) (Guy, C.J., dissenting) ("[A] police officer who has probable cause to search a car, believing it to contain contraband, may constitutionally search the small containers within a passenger's closed purse."); *see also Jardinez*, 184 Wn. App. at 523, 528 (holding search of probationer's iPod was unlawful because the officer "did not expect the search to yield evidence related to" Jardinez's failure to appear or admitted marijuana use and "had no reason to believe" the search would yield evidence that Jardinez possessed a firearm).

Here, because Turner appeared to be trying to conceal something within his car before he stopped, there was a nexus between the car and the suspected violation of possessing controlled substances. The plastic baggies found in the area within Turner's reach reinforced that there was a nexus between the suspected violation—possession of controlled substances—and the car. It was reasonable for Curtright to believe that there may be additional evidence related to this suspected violation in the rest of Turner's car, including in the trunk.

We conclude that Curtright had lawful authority to search Turner's car, including its trunk, under RCW 9.94A.631(1) because he articulated a reasonable suspicion that Turner possessed controlled substances in violation of his community custody conditions and there was a nexus between the suspected violation and Turner's car. The search did not violate article I, section 7, and the trial court erred when it suppressed the evidence seized from the trunk.

CONCLUSION

We reverse the trial court's order suppressing the evidence and its order dismissing the charges against Turner and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Worswick, J.

Maxa, J.