# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56814-4-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| ANTHONY LYNN COUCH, SR. aka ANTHONY CLARK, | |
| Appellant. | |

MAXA, P.J. – Anthony Couch appeals his convictions of second degree rape and second degree assault, arising from an incident involving his former girlfriend. Couch also appeals his sentence of life without release/parole (LWOP) as authorized under the Persistent Offender Accountability Act (POAA), RCW 9.94A.570.

Couch argues that the trial court erred when it denied his CrR 8.3(b) motion to dismiss for government misconduct when state actors video and audio recorded his communications with his attorneys and opened his legal mail. We conclude that there is no indication that the trial court applied the correct legal standard – requiring the State to show beyond a reasonable doubt that Couch was not prejudiced – for the intrusion on Couch's attorney-client communications. In addition, we conclude as matter of law that the State did not produce sufficient evidence to prove the absence of prejudice beyond a reasonable doubt. Therefore, we hold that the trial court erred in denying Couch's CrR 8.3(b) motion.

The trial court generally has discretion to fashion an appropriate remedy for government misconduct under CrR 8.3(b). However, we hold that the only appropriate remedies when the State has intruded on attorney-client communications and cannot disprove prejudice beyond a reasonable doubt is dismissal or a new trial untainted by government misconduct. Accordingly, we reverse Couch's convictions and sentence, and we remand for the trial court to determine whether to dismiss the case or order a new trial with sufficient remedial safeguards.[1]

## FACTS

The State charged Couch with second degree rape-domestic violence and second degree assault-domestic violence after he allegedly forced his former girlfriend to have sex with him after she broke off their relationship.

Before the trial began, Couch filed a motion to dismiss for governmental misconduct under CrR 8.3(b). Couch claimed that the Grays Harbor County Jail had illegally recorded conversations between him and defense counsel and had opened his legal mail. The trial court held a hearing on the motion and heard testimony from Couch, Chief Corrections Deputy Travis Davis, and Eugina Buchanan, a corrections sergeant.

Couch testified that Christopher Swaby and Ruth Rivas were his assigned defense counsel. He stated that he talked to his attorneys about a number of subjects: "Trial strategy, witnesses that may be needed, private investigator, investigation, what they need to be doing, who they need to contact. At one point it was to switch a judge. There – there's a variety of

---

[1] On the merits, Couch argues that (1) the prosecutor engaged in misconduct during his closing and rebuttal arguments, (2) the trial court violated his right to confrontation when it denied his recross-examination of the alleged victim after the State's redirect, (3) defense counsel rendered ineffective assistance of counsel, (4) cumulative error deprived him of his right to a fair trial, and (5) the POAA is categorically unconstitutional for nonhomicide offenders and for offenders whose strike offenses were low-level felony convictions. Because we remand for dismissal or a new trial, we do not address these issues.

things." 1 Rep. of Proc. (RP) at 145. All of the conversations were in furtherance of his defense at trial.

Couch testified that he spoke multiple times with Rivas on the phone. However, he later learned that the telephone conversations had been recorded. Couch also had a number of video conferences with Swaby, and later learned that they had been recorded. Finally, Couch stated that Sergeant Buchanan informed him that a piece of his legal mail had been opened. He said that the envelope was clearly labeled legal mail.

Couch testified that after he found out that his telephone calls with Rivas were being recorded, he stopped talking to her on the phone. After he found out his video meetings with Swaby were being recorded, he stopped meeting with him. And after his legal mail was opened, he stopped using mail to communicate with his lawyers. Couch stated, "And still right now, I don't want to use the telephones, I don't want to use this kiosk, I don't want to use mail. I've been chilled on a lot of things that I . . . want to communicate with [Swaby] and Ms. Rivas, but I – I can't." 1 RP at 150-51.

Davis testified that when a phone number was placed on the privileged list at the jail, phone calls to and from that number were not recorded. Audio and video also were not recorded between accounts identified as attorneys and their clients during video visits.

In October 2021, Swaby requested Rivas to be put on the privileged list. Davis stated that after he added Rivas to the privileged list, he checked the phone system to see if there had been any recorded calls with her number before it was added to the privileged list. There were 70 recorded calls that were made with her involving various inmates. The software indicated that no one had listened to any of the calls. Davis then "locked" the calls so no one could find or listen to them, and they were deleted from the system.

Regarding the video calls, Davis testified that the video system was set up for family visits, and they were recorded. He did not realize until May 7, 2021 that lawyers like Swaby were using the system. So he assumed that conferences between Swaby and Couch were recorded until May 7. Davis stated that he had no knowledge as to whether or not anyone had watched the video recordings.

Buchanan testified that she found an opened envelope marked as legal mail and addressed to Couch. The contents of the envelope were not visible. Buchanan testified that a support specialist at the sheriff's office, who no longer worked there, had opened the mail. Buchanan took the mail directly to Couch and notified him that it was opened and then she made a copy of the outside of the envelope. She testified that she did not have any knowledge as to whether or not any employee of the sheriff's office or the county viewed the contents of the envelope.

The State did not call as witnesses any of the prosecutors or police investigators handling the case as to whether they had seen the videos or the opened legal mail. The State also did not call the employee who had opened the mail to testify.

The trial court denied Couch's motion to dismiss. The court first stated that the only recorded communications between Couch and defense counsel were the 70 telephone calls involving Rivas. But the court found that there was no evidence that anyone had listened to or overheard the recordings. In addition, the video of the attorney meetings was without audio, and any documents exchanged were not able to be read. And there was no evidence that the sheriff's office eavesdropped on those conversations.

Regarding the opened legal mail, the trial court noted Buchanan's testimony that she did not look at the contents and she was not aware that anyone else looked at the contents. The court

4

found that there had "been no evidence presented by the defendant that any human being observed the contents of that envelope at any time, other than him and the person who sent it to him had." 1 RP at 214.

In conclusion, the trial court stated,

I do not find that there has been any violation of the attorney-client privilege. And to the extent that there has been a violation, there's certainly no evidence before the Court that any prejudice resulted especially in light of the uncontroverted facts of this case that no one ever listened to or – or any conversations or – or overheard any conversations or viewed any video inappropriately or viewed the contents of Mr. Couch's mail.

1 RP at 214-15.

*Verdict and Sentence*

The jury convicted Couch of second degree rape and second degree assault.

Couch previously had been convicted of two other felonies that were strike offenses under the POAA – vehicular assault by DUI or reckless driving in 2006 and second degree assault in 2010. Because Couch's current offenses also were strike offenses, the trial court sentenced Couch to life in prison without the possibility of early release.

Couch appeals his convictions and his sentence.

ANALYSIS

A.    INTRUSION ON ATTORNEY-CLIENT COMMUNICATIONS

Couch argues that state actors unlawfully intruded on his communications with his attorneys and that the trial court erred because it did not require the State to establish the absence of prejudice beyond a reasonable doubt. We conclude that there is no indication that the trial court applied the correct legal standard in ruling on Couch's motion to dismiss, and that as a matter of law the State did not prove the absence of prejudice beyond a reasonable doubt.

1.    Legal Principles

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to the assistance of counsel, and that right includes the right to confer privately with their attorney. *State v. Myers*, 27 Wn. App. 2d 798, 804, 533 P.3d 451 *review denied,* 539 P.3d 8 (2023). A state actor's intrusion into private conversations between attorney and defendant violates this right. *Id.* And there is no distinction between an intrusion by jail security and an intrusion by law enforcement. *State v. Irby*, 3 Wn. App. 2d 247, 258, 415 P.3d 611 (2018).

If a state actor has violated the defendant's Sixth Amendment right, prejudice to the defendant is presumed. *Myers*, 27 Wn. App. 2d at 809. Significantly, the presumption of prejudice applies regardless of the intention of the state actors or the degree of interference. *Id.* at 809-10. The presumption of prejudice can be rebutted, but only if the State proves beyond a reasonable doubt that the defendant was not prejudiced. *Id.* at 809. "Because the 'constitutional right to privately communicate with an attorney is a foundational right,' the State must be held to the 'highest burden of proof to ensure that it is protected.' " *Id.* (quoting *State v. Peña Fuentes*, 179 Wn.2d 808, 820, 318 P.3d 257 (2014)).

CrR 8.3(b) states that the trial court may dismiss a criminal prosecution due to "governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." Intruding on confidential attorney-client communications constitutes misconduct under CrR 8.3(b). *Irby*, 3 Wn. App. 2d at 256. We review a trial court's CrR 8.3(b) ruling for abuse of discretion. *Myers*, 27 Wn. App. 2d at 804. An abuse of discretion exists when the trial court applies the wrong legal standard. *Id.*

2.    Applicable Cases

In *Peña Fuentes*, the defendant filed a motion for a new trial after being convicted of three offenses. 179 Wn.2d at 812, 814-15. The prosecutor and the police then decided to investigate possible witness tampering. *Id.* at 816. The prosecutor asked a detective to listen to the defendant's phone calls from jail. *Id.* The detective notified the prosecutor that he had listened to all of the defendant's phone calls, including six conversations between the defendant and his attorney. *Id.*

The prosecutor immediately told the detective not to listen to any more phone calls and not to disclose the content of the attorney-client conversations to anyone. *Id.* at 817. The prosecutor also requested that the detective be removed from the investigation. *Id.* The prosecutor then told defense counsel about the eavesdropping and submitted a declaration stating that the detective did not disclose the content of the attorney-client phone calls to him. *Id.* Because of the detective's conduct, the defendant moved to dismiss the charges. *Id.* Although the trial court agreed that the conduct was egregious, it denied the motion to dismiss, finding that the police misconduct did not affect the previous trial or the motion for a new trial. *Id.*

The Supreme Court adopted the rule that when eavesdropping on attorney-client communications has occurred, the State must prove the absence of prejudice beyond a reasonable doubt. *Id.* at 819-20. The court held that the record was unclear as to what standard the trial court applied and therefore remanded for the trial court to consider whether the State proved the absence of prejudice beyond a reasonable doubt. *Id.* at 820.

In *Irby*, the defendant filed a motion to dismiss, claiming that the jail guards opened and read his outgoing mail that contained privileged legal communications for his attorney. 3 Wn. App. 2d at 251. Although the trial court found that the jail guards violated the defendant's right

to counsel, the trial court did not presume prejudice because no investigative law enforcement were involved in the infringing conduct. *Id.* at 251, 257. The trial court then placed the burden of proving prejudice on the defendant and found that he had not done so. *Id.* at 251-52.

Division One of this court held that the trial court erred by not imposing a presumption of prejudice and not requiring the State to prove the absence of prejudice beyond a reasonable doubt. *Id.* at 259-60. The court rejected the trial court's distinction between misconduct by law enforcement and by jail security officers, stating the presumption of prejudice applied in both instances. *Id.* at 258-59. The court reversed and remanded for the trial court to hold an evidentiary hearing in which the court must apply the presumption of prejudice and require the State to prove beyond a reasonable doubt that the defendant was not prejudiced. *Id.* at 263.

In *Myers*, the defendant was arrested for first degree robbery of a bank. 27 Wn. App. 2d at 802. Pursuant to a search warrant, law enforcement found a handwritten note in the defendant's home that appeared to be the one given to the bank teller. *Id.* In an effort to compare the handwriting, corrections deputies seized five documents from the defendant's jail cell. *Id.* An employee at the sheriff's office called the prosecutor when she viewed the documents, believing that they contained privileged attorney-client communications. *Id.* In order to determine whether the documents were privileged, the prosecutor had a detective that was not involved in the case to review the documents. *Id.* at 802-03. The detective concluded that several of the seized documents may have contained privileged attorney-client communications. *Id.* at 803.

The trial court declined to apply a presumption of prejudice because the conduct of law enforcement and the prosecutor was not sufficiently egregious. *Id.* at 809. The court then concluded that the defendant had failed to demonstrate actual prejudice. *Id.*

Division One held that the trial court misinterpreted and misapplied the law in several ways. *Id.* at 808, 809, 812-13, 814, 15. The court emphasized again that prejudice must be presumed and the defendant had no burden to show prejudice, and that the State must prove the absence of prejudice beyond a reasonable doubt. *Id.* at 809, 813-14. The court reversed and remanded for the trial court to apply the proper legal standards. *Id.* at 823.

### 3. Trial Court Error

*Peña Fuentes* and *Irby* established the proper framework for the trial court here to address the alleged violation of Couch's Sixth Amendment right to confer privately with his attorneys.[2] First, the court must determine whether state actors intruded on confidential attorney-client communications. *Irby*, 3 Wn. App. 2d at 252-53. Second, if an intrusion occurred, the court must presume prejudice to the defendant. *Peña Fuentes*, 179 Wn.2d at 811. Third, the court must determine whether the State proved beyond a reasonable doubt that the intrusion did not prejudice the defendant. *Id.* at 819-20.

Applying this framework here, it is undisputed that state actors intruded on Couch's communications with his attorneys in violation of his Sixth Amendment right to confer privately with those attorneys. The Grays Harbor County Jail (1) recorded multiple telephone calls between Couch and Rivas, (2) video recorded several meetings between Couch and his attorneys, and (3) opened at least one piece of legal mail. Therefore, the trial court was required to presume prejudice to Couch. The only question for the trial court was whether the State proved beyond a reasonable doubt that Couch was not prejudiced.

However, there is no indication from the record that the trial court applied this legal framework. The court should have acknowledged that state actors had violated Couch's Sixth

---

[2] *Myers* had not yet been decided when the trial court addressed Couch's motion to dismiss.

Amendment right. Instead, the court concluded, "I do not find that there has been any violation of the attorney-client privilege" because nobody had listened to the recordings. 1 RP at 214. But the existence of a *violation* is indisputable – state actors recorded attorney-client communications.

Possibly because of the conclusion that no violation had occurred, the trial court did not explicitly state that it was required to presume that Couch had been prejudiced. Instead, the court stated that if there had been a violation, there was "certainly no evidence before the Court that any prejudice resulted especially in light of the uncontroverted facts of this case that no one ever listened to or – or any conversations or – or overheard any conversations or viewed any video inappropriately or viewed the contents of Mr. Couch's mail." 1 RP at 215. Further, the court found that there had "been no evidence *presented by the defendant* that any human being observed the contents of that envelope at any time, other than him and the person who sent it to him had." 1 RP at 214 (emphasis added). To the extent that the court implied that *Couch* was required to present evidence of prejudice, that implication was incorrect. Prejudice was presumed.

Finally, the trial court did not explicitly state that the State was required to prove the absence of prejudice beyond a reasonable doubt. As noted in the previous paragraph, the court concluded that there was no evidence of prejudice. But the court did not conclude that the State had proved *beyond a reasonable doubt* that Couch had not been prejudiced.

There is no indication that the trial court applied the correct legal standard – requiring the State to show beyond a reasonable doubt that Couch was not prejudiced – when addressing Couch's motion to dismiss. Therefore, the trial court erred in analyzing Couch's CrR 8.3(b) motion to dismiss.

4.    Failure of Proof Beyond a Reasonable Doubt

The courts in *Pena Fuentes*, *Irby*, and *Myers* all remanded for the trial court to address whether the State was able to prove the absence of prejudice beyond a reasonable doubt. *Pena Fuentes*, 179 Wn.2d at 820; *Irby*, 3 Wn. App. 2d at 263; *Myers*, 27 Wn. App. 2d at 823. However, we conclude as a matter of law under the facts of this case that the State did not prove beyond a reasonable doubt that Couch was not prejudiced.

Couch presented testimony showing how he had been prejudiced by the state actors' intrusion on his attorney-client communications. He testified that after he found out about the intrusions, he stopped talking to Rivas on the phone, he stopped meeting with Swaby over video, and he stopped using mail to communicate with his lawyers. As a result, his communications with his lawyers – which focused on trial preparation – were chilled.

At the hearing, the State made no effort to refute this testimony. The State presented no evidence that Couch had been able to fully communicate with his lawyers despite the intrusion on their attorney-client communications. Therefore, the State was unable to prove that Couch was not prejudiced in this way.

Instead, the State focused on whether anyone had listened to the recorded telephone calls, viewed the recorded video conferences, or read the opened legal mail. But the State's evidence on this issue was inadequate. Davis testified he did not know whether or not anyone had viewed the videos. Buchanan testified that she did not know if anyone read the opened mail. The State did not call as witnesses any of the prosecutors or police investigators handling the case as to whether they had seen the videos or the opened legal mail. The State also did not call as a witness the employee who had opened the mail to testify as to whether she read the mail or

11

shared it with anyone else. As a result, the State was unable to prove that nobody involved in Couch's case had seen the attorney-client communications.

The record demonstrates that the State did not prove beyond a reasonable doubt that Couch was not prejudiced by state actors' intrusion on his attorney-client communications. Therefore, we hold that the trial court erred in failing to grant Couch's CrR 8.3(b) motion based on government misconduct.

B.      REMEDY FOR INTRUSION ON ATTORNEY-CLIENT COMMUNICATIONS

Because we have determined that the State cannot prove beyond a reasonable doubt that Couch was not prejudiced, we must address the proper remedy under CrR 8.3(b) for the State's intrusion on Couch's attorney-client communications.

CrR 8.3(b) states that a trial court "may" dismiss a criminal prosecution based on government misconduct. This means that dismissal based on government misconduct is allowed but not required under CrR 8.3(d). *Irby*, 3 Wn. App. 2d at 264. The trial court has discretion to craft an appropriate remedy. *Id.* "[T]he trial court should consider the totality of the circumstances, evaluating both the degree of prejudice to [the defendant's] right to a fair trial and the degree of nefariousness of the conduct by the state actors." *Id.*

When the State fails to prove the absence of prejudice beyond a reasonable doubt, dismissal certainly is one available remedy and must be "thoroughly and meaningfully" considered by the trial court. *Myers*, 27 Wn. App. 2d at 821. However, the court must recognize that " 'dismissal is an extraordinary remedy, appropriate only when other, less severe sanctions will be ineffective.' " *Irby*, 3 Wn. App. 2d at 264 (quoting *State v. Garza*, 99 Wn. App. 291, 301-02, 994 P.2d 868 (2000)).

In addition, ordering a new trial untainted by government misconduct also is an available remedy. *Irby*, 3 Wn. App. 2d at 264-65. Given the seriousness of governmental intrusion on attorney-client communications, we conclude that these are the only two remedies available to the trial court. *See id.* (stating that "[i]n the event that the trial court determines that a remedy short of dismissal is warranted, vacation of the judgment will nevertheless be necessary.") The new trial must include remedial safeguards to ensure that the State does not benefit from state actor misconduct. "[I]n anticipation of yet another trial, other remedies might include—singularly or in combination—suppression of evidence, disqualification of specific attorneys from [the defendant's] prosecution, disqualification of the [prosecuting attorney's office] from further participation in the case, or exclusion of witnesses tainted by the governmental misconduct." *Id.* at 265.

Therefore, on remand the trial court must determine in its discretion whether to dismiss Couch's case or order a new trial with sufficient remedial safeguards.

## CONCLUSION

We reverse Couch's convictions and sentence, and we remand for the trial court to determine whether to dismiss the case or order a new trial with sufficient remedial safeguards.

MAXA, P.J.

We concur:

LEE, J.

VELJACIC, J.

13