
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39879-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM R. HUDDLESTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — William Huddleston pleaded guilty to cyberstalking, telephone harassment, stalking, intimidating a witness, and eight gross misdemeanor counts of violating a domestic violence court order.  The court accepted the plea and imposed financial obligations, fines, and penalties that were agreed to by the parties.  Huddleston now appeals, raising several issues.

First, Huddleston contends his constitutional right to confer privately with his attorney was violated when the court restricted his communications from jail; requiring the jail to confirm that Huddleston's calls and letters from jail were made only to his attorney.  Second, he argues the trial court erred by imposing financial obligations, fines, and penalties despite his indigency and inability to pay, violating the excessive fines clause of both the Washington Constitution and Eighth Amendment to the United States

Constitution. Third, he asserts that the community custody provision that allows searches of his home without suspicion violates article I, sec. 7 of the Washington Constitution.

We remand for the limited purpose of striking the victim penalty assessment (VPA) but otherwise find no error and affirm.

BACKGROUND

William Huddleston was originally charged by information with 11 charges spanning an eight-month period. The initial charges were one count of cyberstalking, eight counts of violation of a domestic violence court order, one count of telephone harassment, and one count of felony stalking.

Huddleston was originally allowed to remain out of custody on bond pending trial. However, after finding that Huddleston violated conditions of release by having third-party contact, the court revoked his bond and he remained in custody pending trial. Additionally, the State obtained evidence that he was tampering with the witnesses.

While in custody, the court prohibited Huddleston from using the telephone except to contact his attorney and only under the supervision of jail staff. The court instructed jail staff to be present during Huddleston's phone calls and ensure that the calls were made to his attorney but maintain sufficient distance to avoid intruding upon the conversations.

Sometime after imposing this restriction, the court received additional information that Huddleston was again tampering with and intimidating the witnesses from jail. As a result of this conduct, three counts of witness tampering were added to his charges.

That same month, the parties appeared in court where the State requested a mail restriction. Given Huddleston's recent attempts to contact witnesses, the State requested a restriction that he be allowed to only contact his attorney and that his mail be subject to inspection to ensure compliance with the court's order. The court granted the motion, imposing a mail restriction that read:

> The Defendant is precluded from sending out any letters or mail to anyone other than his attorney and all outgoing letters are subject to inspection to assure compliance herewith.

Clerk's Papers (CP) at 86.

In May 2022, the State told the court that jail officials had, two years prior, discovered notes in Huddleston's handwriting, listing email accounts and passwords. The State explained that suspicions arose when officials confiscated a letter in which Huddleston directed someone to access the accounts in order to create the impression that another person was sending the messages.

One month later, Huddleston moved to proceed pro se. Around that same time, he filed a motion to review the conditions of his bond. In this motion, he requested that he be allowed to use the inmate phone. Additionally, he requested that he be allowed to send mail to other individuals, acquiescing to inspection to ensure he was not sending

3

mail to alleged victims and/or witnesses. Finally, he requested that letters to his standby attorney and private detective be considered legal and private and checked only for the correct address. In support of these motions, Huddleston complained that the current conditions were interfering with his ability to communicate with standby counsel. At a hearing on the motion, the court agreed to modify the conditions to allow Huddleston to send out mail other than just to his standby counsel, subject to inspection. The new restriction read that his "outgoing letters are subject to inspection and seizure to assure compliance herewith." CP at 100.

Huddleston filed two separate CrR 8.3 motions based on alleged discovery violations by the State. The court denied both motions.

Huddleston was later appointed new counsel and ultimately entered a plea in exchange for the dismissal of half his charges. He agreed to plead guilty to cyberstalking, telephone harassment, stalking, intimidating a witness, and eight gross misdemeanor counts of violating a domestic violence court order. As part of the plea agreement, Huddleston agreed to a $1,000 fine, a $500 victim penalty assessment (VPA), and a $115 domestic violence penalty assessment. At sentencing, the court imposed the $1,615 in fines, penalties, and assessments as agreed.

Additionally, the court imposed 12 months of community custody. As one of his conditions, the court ordered Huddleston to "consent to home visits by the Department of Corrections (DOC), including access for the purposes of visual inspection of all areas [of]

4

the Defendant's residence in which the Defendant lives or has exclusive or joint control and/or access, to monitor compliance with supervision." CP at 52.

Huddleston appeals.

## ANALYSIS

1. RIGHT TO CONFER PRIVATELY WITH COUNSEL

Huddleston argues that the government unlawfully intruded on his private attorney-client communications when it ordered that his calls to counsel be made "under supervision of jail staff" and that his legal mail was "subject to inspection." We conclude that the issue is waived and decline to review it.

The Sixth Amendment to the United States Constitution guarantees that a criminal defendant has the right to assistance of counsel, including a right to confer privately with their attorney. *State v. Couch*, 29 Wn. App. 2d 660, 667, 541 P.3d 1043 (2024). "A state actor's intrusion into private conversations between attorney and defendant violates this right." *Id.*

Allegations of government intrusion of attorney-client relationship are generally raised in a motion to dismiss for misconduct under CrR 8.3. The proper framework for addressing alleged violations was recently recognized in *Couch*. First, the trial court must determine if an intrusion occurred. *Id.* at 670. Second, if an intrusion is found, then the court presumes prejudice. Third, the burden shifts to the State to show the lack of prejudice beyond a reasonable doubt. *Id.*

By pleading guilty, Huddleston waived most pre-trial issues, even those affecting constitutional rights. *State v. Brandenburg*, 153 Wn. App. 944, 948, 223 P.3d 1259 (2009). A defendant who pleads guilty does not waive challenges to the validity of the statute, sufficiency of the information, jurisdiction of the court, and the circumstances under which the plea was entered. *Id.* Nor does a plea result in waiver of the right to effective assistance of counsel as it pertains to the plea agreement. *In re Pers. Restraint of Schorr*, 191 Wn.2d 315, 321, 422 P.3d 451 (2018).

Huddleston's claim of interference was not raised below, and he does not characterize the issue as one of ineffective assistance of counsel. Thus, it was waived by his guilty plea unless it falls within one of the exceptions noted above. As the State points out, Huddleston knew he was waiving most of his rights by pleading guilty and specifically negotiated the right to appeal the trial court's decisions on an unrelated CrR 8.3 motion (that is not being raised on appeal). Nevertheless, Huddleston contends that his right to confer privately with counsel was not waived because it was part of the circumstances of his plea. For several reasons this argument fails.

As a preliminary matter, we observe that it is unclear whether a violation occurred. Because Huddleston did not raise this issue below, the facts are not developed and the trial court did not make findings on whether any interference occurred. Still, Huddleston contends that the fact of interference is undisputed. In support of this claim, he asserts

that the court's orders amounted to per se interference and the State's failure to deny his allegations of interference amounts to an implicit concession. We disagree.

The trial court's orders to monitor Huddleston's phone calls and letters did not amount to a per se violation of his right to privately confer with counsel. While the court ruled that Huddleston's phone calls should be monitored to ensure that he was only calling his attorney, the court made clear that jail staff must maintain sufficient distance to avoid intruding upon his attorney client privilege. And while staff was directed to inspect Huddleston's outgoing mail to ensure it was being sent only to his attorney, there is no evidence that staff read this mail.

Huddleston also claims that the State's failure to deny his allegations of interference amounts to a concession. In several of his pro se pre-trial motions, Huddleston made vague allegations of interference. In responding to these motions, the State had no reason to address the allegations. Nor was it necessary for the trial court to make findings on these allegations in deciding Huddleston's motions. The State's failure to deny his allegations did not amount to a concession that the allegations were true.

Even assuming there was a violation, the issue is waived unless Huddleston can demonstrate that the interference affected the circumstances of his plea. He fails to do so. Huddleston is not challenging the voluntariness of his plea. Additionally, there is nothing in the record to suggest any interference with Huddleston's right to confer privately with

counsel in the eight months between the time counsel was reappointed and the time when

Huddleston pleaded guilty.

Huddleston waived his right to challenge allegations of interference with his right

to confer privately with counsel by pleading guilty and failing to show that his claim falls

within one of the exceptions to waiver.

2.   LEGAL FINANCIAL OBLIGATIONS, FINES, AND PENALTIES

Huddleston contends the court's imposition of $1,615 in legal financial

obligations, fines, and penalties violated the excessive fines clause of the Washington

Constitution and the Eighth Amendment.  Alternatively, he claims the court abused its

discretion by imposing these obligations.  The State concedes the VPA should be struck

but contends that Huddleston is precluded from objecting to the other financial

obligations because he agreed to them as part of the plea agreement.  Alternatively, the

State asserts that the fees were not constitutionally excessive in this case.  We address

each argument in turn.

*A.  VPA*

Under former RCW 7.68.035(1)(a) (2018), a judge was required to impose the

$500 penalty assessment for one or more felony or gross misdemeanor convictions.

However, in 2023, legislation amended this statute.  *See* LAWS OF 2023, ch. 449, § 1.

This amendment had an effective date of July 1, 2023, and included a provision

instructing a court not to impose the penalty assessment if the court found the defendant

indigent at the time of sentencing.  *See* RCW 10.01.160(3).  Here, Huddleston was found indigent at the time of sentencing.  Additionally, Huddleston is entitled to the benefit of the amendment because his case was pending on direct appeal.  *See Ramirez*, 191 Wn.2d at 735.  We therefore accept the State's concession and remand for the superior court to strike the VPA from Huddleston's judgment and sentence.

### B.  *$115 Domestic Violence Penalty Assessment and $1,000 Fine*

Huddleston next contends the $1,000 fine and $115 domestic violence penalty assessment violate the excessive fines clause of the Washington Constitution and Eighth Amendment.  There are two issues here: imposing the obligations and collecting the obligations.  We conclude that Huddleston waived any argument as to whether the imposition of these obligations was improper.  As to whether the collection of such obligations violates the excessive fines provision, the issue is not ripe, and we decline to review it.

Huddleston contends the court abused its discretion by imposing the fees because it did not inquire into his ability to pay.  Under RCW 10.99.080(1), a court is authorized to impose a penalty of "one hundred dollars, plus an additional fifteen dollars on any adult offender convicted of a crime involving domestic violence."  Unlike other costs, the domestic violence penalty assessment "does not prohibit imposition of an assessment against indigent defendants."  *State v. Smith*, 9 Wn. App. 2d 122, 127, 442 P.3d 265 (2019).  However, the statute still "encourages judges to inquire as to whether imposition

9

of an assessment on the defendant will impact the victim." *Id.* at 127-28 (citing RCW 10.99.080(5)). But if the assessment does not negatively impact the victim, "then the penalty may be ordered without further concern for the defendant's financial circumstances or ability to pay." *Id.* at 128.

Here, there is nothing in the record to indicate that imposing the domestic violence penalty assessment would impact the victim. In fact, the assessment was agreed to by both parties. Accordingly, the trial court acted within its discretion by imposing the domestic violence penalty assessment.

Likewise, for the $1,000 fine statutorily authorized by RCW 9A.20.021, the trial court did not abuse its discretion.[1] Huddleston states that an individualized inquiry into a defendant's ability to pay is required before imposing discretionary costs under RCW 10.01.160. However, he concedes that this inquiry is *not required* for other financial penalties not governed by RCW 10.01.160. Huddleston does not provide any authority supporting his position that the failure to consider a defendant's ability to pay before imposing a fine is an abuse of discretion. Additionally, if Huddleston did have concern for his ability to pay this fee, he should have objected below. Instead, the fine was part of the plea agreement. Consequently, the imposition of the fine was not an abuse of discretion.

---

[1] Huddleston does not argue that the amount was not statutorily authorized, just that the trial court abused its discretion by failing to inquire into his ability to pay.

10

Next, Huddleston claims that the collection of these obligations will violate the excessive fines provision of the State constitution. The State argues that this issue was not preserved and alternatively is not ripe.

Under RAP 2.5(a), this court may refuse to review a claim of error that was not raised in the trial court. Here, Huddleston did not object to either the $1,000 fine or $115 domestic violence penalty assessment below. Therefore, he must demonstrate a manifest error affecting a constitutional right. Huddleston contends these fees violate the excessive fines clause under both the federal and state constitutions, which implicates a constitutional interest. *State v. Ramos*, 24 Wn. App. 2d 204, 215, 520 P.3d 65 (2022). However, the "imposition of the penalty assessment, standing alone, is not enough to raise constitutional concerns." *State v. Curry*, 118 Wn.2d 911, 917 n.3, 829 P.2d 166 (1992). Unless and until the State attempts enforcement of such fines and fees, a constitutional claim of excessive fines is not ripe. *State v. Shelton*, 194 Wn. App. 660, 672, 378 P.3d 230 (2016).

We conclude that the trial court did not err by imposing the obligations and Huddleston's challenge to the collection of these obligations is not ripe for review.

3. COMMUNITY CUSTODY CONDITIONS

Huddleston challenges the community custody provision imposed by the court that he "must consent to home visits by the [DOC], including access for the purposes of visual inspection of all areas [in] the Defendant's residence in which the Defendant lives or has

11

exclusive or joint control and/or access, to monitor compliance with supervision." CP at 52. He contends that to be constitutional, any such searches must be limited to those that are based on well-founded suspicion that the offender has violated a community custody condition and there is a nexus between the place to be searched and the suspected violation. Appellant's Br. at 30-31.

## A. Standard of Review

Whether an entity has authority to impose conditions of community custody under the Sentencing Reform Act "is a question of statutory interpretation, which we review de novo." *Matter of Ansell*, 1 Wn.3d 882, 892, 533 P.3d 875 (2023). However, when there is no question as to whether there is authority to impose a condition but rather a challenge that the entity erred in imposing it, "we review the condition for abuse of discretion." *Id*. As such, we will reverse "such conditions only if they are manifestly unreasonable." *State v. Peters*, 10 Wn. App. 2d 574, 583, 455 P.3d 141 (2019). "A court abuses its discretion if a condition is either unconstitutional or manifestly unreasonable." *State v. Lee*, 12 Wn. App. 2d 378, 401, 460 P.3d 701 (2020).

## B. Ripeness of Community Custody Provisions

In order for this court to review a community custody condition it must be ripe for review. Several years ago, our Washington Supreme Court clarified the analysis to determine whether a community custody provision is ripe for review. *See State v. Sanchez Valencia*, 169 Wn.2d 782, 786-91, 239 P.3d 1059 (2010). Under that analysis, a

12

condition "is ripe 'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *State v. Cates*, 183 Wn.2d 531, 534, 354 P.3d 832 (2015) (internal quotation marks omitted) (quoting *Sanchez Valencia*, 169 Wn.2d at 786); *see also State v. Nelson*, 4 Wn.3d 482, 494, 565 P.3d 906 (2025).

An almost identical argument was decided in *Cates*, 183 Wn.2d at 534. In that case, the challenged community custody condition required the defendant to consent to home visits, which included access to and visual inspection of his residence and computers, to monitor his compliance with other conditions. *Id.* at 533. Similar to the arguments raised in this case, the defendant in *Cates* challenged the condition facially and as-applied, arguing the condition failed to limit searches to those based on reasonable cause. *Id.* at 535.

The Supreme Court rejected the facial challenge, noting that the language of the community custody condition did not allow for unrestricted searches but rather limited searches to those necessary to monitor compliance with supervision. *Id.* In addition, to the extent that there could be a future misapplication of the condition that might violate the constitution, such would depend on the circumstances of the search and therefore require further factual development. *Id.* Finally, the court found that there was no risk of hardship to the defendant in failing to address an as-applied challenge before the condition had been enforced because the condition did not require the defendant to do or refrain from doing any affirmative act until the State requested and conducted a home

visit. *Id.* at 535-36. Years later, this same analysis was upheld in another case. *See State v. Peters*, 10 Wn. App. 2d 574, 455 P.3d 141 (2019) (holding that a challenge was not ripe for review when it required the defendant to submit to home visits to monitor compliance with supervision).

*Cates* is dispositive. To the extent Huddleston makes a facial challenge to the condition imposed in his case, the condition limits searches and inspections to those inspections needed to monitor compliance with supervision. Moreover, if Huddleston believes that DOC's enforcement of the condition at a future time results in a violation of his constitutional rights, then he can raise that challenge and develop the necessary factual record to show a violation. But until the condition is enforced, it does not require Huddleston to take or refrain from any affirmative action.

We affirm Huddleston's conviction and sentence but remand for the limited purpose of striking the VPA from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

I CONCUR:

_____
Cooney, J.

14

NO. 39879-0-III

Fearing, J. (concurring) – I concur in the majority's rulings, although sometimes for a different reason. I agree with the majority's ruling that William Huddleston waived his right to challenge the legality of law enforcement listening to conversations and opening his mail. I would expressly hold that the constitutional challenge does not comprise manifest constitutional error under our facts. I also agree with the majority that Huddleston waived any statutory challenge to the superior court's imposition at sentencing of a $1,000 fine and a $115 domestic violence penalty. In addition, I agree with the majority that Huddleston did not preserve any constitutional error under the excessive fines clause and that any error did not constitute manifest constitutional error. I would avoid addressing whether any constitutional challenge is ripe for review. I agree with the majority to strike the victim penalty assessment.

I am bound by *State v. Cates*, 183 Wn.2d 531, 354 P.3d 832 (2015) to join in the majority's refusal to address William Huddleston's challenge to a community custody condition that declares Huddleston to have consented to searches of his residence. Under *Cates*, the challenge lacks the necessary maturity. I consider *Cates* to be wrongly decided, however. The three dissenting justices in *State v. Cates* correctly reasoned that a challenge to unlimited searches of the offender's residence violates article 1, section 7 of the Washington Constitution and the Fourth Amendment to the United States

Constitution. More importantly, as rightly concluded by the dissenters in *Cade*, the challenge is ripe for review.

    1. *Intercepted Communications*. William Huddleston contends that the superior court unlawfully authorized law enforcement to intercept his communications with his attorney. Huddleston never complained about any interference before the superior court. A guilty plea waives or renders irrelevant all constitutional violations that occurred before the guilty plea, except those related to the circumstances of the plea or to the government's legal power to prosecute regardless of factual guilt. *State v. Sharpe*, 30 Wn. App. 2d 766, 776, 546 P.3d 1046 (2024). The parties dispute whether law enforcement overheard conversations between Huddleston and his counsel and whether law enforcement read correspondence between Huddleston and his attorney. Nevertheless, Huddleston presents no evidence that the subject of any earwigged or perused communication involved the circumstances of the plea. Huddleston also presents no evidence that he would have withdrawn his plea had he known of any intercepted confidential communications.

    As a general rule, appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a). Nevertheless, a claim of error may be raised for the first time on appeal if it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Any error is not manifest, if the record lacks the facts necessary to adjudicate the claimed error. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

2. *Victim Penalty Assessment.* I agree with the majority and accept the State's concession that the superior court should strike the victim penalty assessment of $500. At sentencing, William Huddleston was indigent. A 2023 statutory amendment precludes imposition of the assessment if the offender is indigent at sentencing.

3. *Excessive Fine and Penalty.* William Huddleston challenges, on two grounds, a $1,000 fine and a $115 domestic violence penalty assessed by the superior court at sentencing. RCW 9A.20.021 authorizes the fine. RCW 10.99.080 authorizes the penalty. First, Huddleston argues, based on statutory grounds, that the superior court failed to assess his ability to pay before imposing the penalty and fine. Second, he contends, based on his indigency, that the fine and penalty breached the excessive fine clauses of the Washington and United States Constitutions.

I agree with the majority that William Huddleston waived any argument based on any statutory requirement to assess financial ability. For this reason, I also agree with the majority that this court should not address any constitutional error. Although the superior court ruled that Huddleston was indigent for purposes of an appeal, Huddleston failed to provide a full accounting for his employability, income, and assets. Nor did the superior court engage in any inquiry of Huddleston's ability to pay the penalty and fine. The cost of an attorney on appeal exceeds $1,115.

As previously stated, appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a). Nevertheless, a claim of error may be raised for the first time on appeal if it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3).

3

Any error is not manifest, if the record lacks the facts necessary to adjudicate the claimed error. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

    4. *Community Custody Conditions*.  The superior court sentenced William Huddleston to 84 months of incarceration and twelve months of community custody thereafter.  One condition during community custody demands that Huddleston

> consent to home visits by the Department of Corrections, including access for the purposes of visual inspection of all areas in the Defendant's residence in which the Defendant lives or has exclusive or joint control and/or access, to monitor compliance with supervision.

Clerk's Papers (CP) at 52.  Huddleston challenges this condition as unconstitutional.  The majority declines to address the challenge on the ground that the challenge is not ripe.  Presumably Huddleston remains incarcerated.  Therefore, DOC has not yet sought to enforce the challenged community custody.

    Awkward language in the community custody condition could raise anomalies in the future.  The superior court could have written that "DOC enjoys the right to enter William Huddleston's residence and search the premises at any time in order to monitor compliance with supervision."  Instead, the court phrased the community custody condition as imposing an obligation on Huddleston to "consent to home visits . . . to monitor compliance."  (CP) at 52.  The language may be read in a variety of ways.

    The majority's dismissal of William Huddleston's challenge to the community custody condition on ripeness grounds assumes that Huddleston may challenge the

4

constitutionality of the search at the time of the search. The plain meaning of the community custody condition establishes, however, that Huddleston, in advance, consents to any search, regardless of whether specifically asked before entry and regardless of the reason for the search. He has no choice to consent when DOC seeks to enter his abode. When consenting to a search, the offender foregoes the right to later challenge the constitutionality of the search. *State v. Bustamante-Davila*, 138 Wn.2d 964, 983 P.2d 590 (1999). Thus, with the community custody condition, Huddleston lacks any opportunity to challenge a search after its completion.

On the other hand, use of the word "consent" in the community custody condition may require that DOC, before entering William Huddleston's abode, must ask Huddleston for consent to do so. In turn, since DOC must ask, Huddleston may have the right to deny consent. By denying consent, Huddleston may preclude the search of his premises. Nevertheless, Huddleston probably violates the community custody condition, and the court may penalize him for doing so.

DOC may have no legitimate grounds to enter Huddleston's residence because it lacks a reasonable articulable suspicion that any objects or activities inside the home hold a nexus to a purported community custody violation. DOC might engage in a hunting expedition. Huddleston might ask DOC for the basis of entering and searching his home and learn that DOC lacks grounds. Huddleston may then justifiably reject consent. DOC may still punish him, however, for violating the community custody condition under

5

which he possesses the obligation to consent to all searches. He is darned if he consents and darned if he withholds consent.

The State does not argue against the illegality of William Huddleston's community custody condition. The condition is unconstitutional. In the context of a community custody violation, our Supreme Court held in *State v. Cornwell,* 190 Wn.2d 296, 301, 412 P.3d 1265 (2018) that article I, section 7 of the Washington Constitution requires a nexus between the property searched and the suspected probation violation. In addition, a community custody officer must hold reasonable cause to believe the offender committed a probation violation before conducting a search at the expense of the individual's privacy. *State v. Cornwell,* 190 Wn.2d 296, 304 (2018). The search may diminish an individual's privacy interest only to the extent necessary for the State to monitor compliance with the particular probation condition that gave rise to the search. *State v. Cornwell,* 190 Wn.2d 296, 304 (2018).

William Huddleston's community custody condition violates the safeguards established in *Cornwell*. The condition gives community custody officers an unrestricted right to search Huddleston's residence.

William Huddleston's community custody condition also breaches a Washington statute. RCW 9.94A.631 provides an exception to the warrant requirement. RCW 9.94A.631(1) reads:

> If an offender violates any condition or requirement of a sentence, a community corrections officer may arrest or cause the arrest of the offender without a warrant, pending a determination by the court or by the

department. If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property.

The phrase "reasonable cause" in RCW 9.94A.631(1) demands the officer to have a well-founded suspicion that a violation has occurred. *State v. Jardinez*, 184 Wn. App. 518, 524, 338 P.3d 292 (2014). Reasonable suspicion requires specific and articulable facts and rational inferences. *State v. Jardinez*, 184 Wn. App. 518, 524 (2014). Huddleston's community custody condition does not comply with these statutory restrictions on home visits.

To repeat, the majority declines to review the constitutional challenge based on the ripeness doctrine. A preenforcement challenge to a community custody condition is ripe for review when the issues raised are primarily legal, do not require further factual development, and the challenged action is final. *State v. Nelson*, 4 Wn.3d 482, 494, 565 P.3d 906 (2025); *State v. Cates*, 183 Wn.2d 531, 534 (2015); *State v. Sanchez Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010).

In addition, when assessing ripeness, the court must consider the hardship the offender will face on declination of the preenforcement challenge. *State v. Nelson*, 565 P.3d 906, 913 (2025); *State v. Sanchez Valencia*, 169 Wn.2d 782, 789 (2010). The Washington Supreme Court recognizes that the risk of hardship to the offender may justify review of a challenge to a community custody condition regardless of the need for factual development. *State v. Nelson*, 565 P.3d 906, 913 (2025); *State v. Cates*, 183

Wn.2d 531, 535 (2015). The risk looms greatest when the challenged conditions will immediately restrict the offender's conduct on release from prison. *State v. Sanchez Valencia*, 169 Wn.2d 782, 791 (2010).

No facts need to be developed to declare William Huddleston's community custody condition invalid. Huddleston does not challenge the condition based on any discrete facts, but on its face. The condition is now and will be forever more invalid no matter what action DOC takes with regard to Huddleston.

A court's invalidation of the community custody condition harms DOC none. Even without the language in the judgment and sentence, DOC may enter and search William Huddleston's domicile if it has reasonable suspicion that evidence inside the home holds relevance to a community custody violation. RCW 9.94A.631(1); *State v. Jardinez*, 184 Wn. App. 518 (2014).

Contemporaneously on his release, William Huddleston suffers limits to his liberty based on the community custody condition. On return to his home, Huddleston must pattern his conduct on the assumption that DOC may enter his home at any time. He may as well hand DOC a key to his residence. One may argue that Huddleston should already conform his behavior to comply with community custody conditions and to the law such that he incurs no prejudice by unlimited searches. But American law takes a more mature approach to individual liberties. Article I, section 7 of the Washington Constitution and RCW 9.94A.631 demands a reasonable articulable suspicion to search even a released offender's domicile. Huddleston also incurs prejudice on release, because, as already

noted, he may be harmed if he consents and harmed if he denies consent. Because of this prejudice to Huddleston and because the issue is purely a legal question that needs no factual development, this court should now strike the community custody condition.

Unfortunately, a majority of the Supreme Court, in *State v. Cates*, 183 Wn.2d 531 (2015), ruled that a preenforcement suit to invalidate the same community custody condition was not ripe. Michael Cates contested a condition that read:

> You must consent to [Department of Corrections] home visits to monitor your compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have exclusive/joint control/access, to also include computers which you have access to.

*State v. Cates*, 183 Wn.2d 531, 533 (2015). For our purposes, the condition is identical to Huddleston's community custody condition. Cates argued his challenge did not require further factual development because the condition, on its face, authorized unconstitutional searches. When declaring the challenge premature, the Supreme Court surprisingly wrote that the condition as written did not authorize any searches. Despite the language demanding that Cates grant consent, the court commented that DOC must attempt to enforce the condition by requesting a home visit. This court followed the *Cates* decision in *State v. Peters*, 10 Wn. App.2d 574, 455 P.3d 141 (2019).

The dissent, in *State v. Cates*, characterized Michael Cates' challenge to the community custody condition as primarily legal in nature. The dissent also reasoned that the contest did not require further factual development. Cates did not challenge the legality of any particular search, but the condition on its face. DOC did not need to

9

conduct an illegal search before the Supreme Court could resolve the constitutionality of the condition. The language of the community custody condition demanded that Cates consent to all entries and searches. The condition permitted searches without reasonable cause.

In *State v. Cates*, the Supreme Court held that the risk of hardship to Michael Cates was insufficient to justify review because complying with the challenged condition did not require the defendant to do, or refrain from doing, anything on his release until the State requested and conducted a home visit. But, although the court suggested otherwise, the community custody condition imposed no requirement that DOC request a visit before doing so. The dissent in *Cates* correctly concluded that Michael Cates suffered hardship. On release, Cates needed to immediately and repeatedly consent to entry into his home. He needed to alter his behavior accordingly in order to avoid a violation of the community custody condition.

_Fearing, J._

Fearing, J.